*In re* MARRIAGE OF BARBARA CHALKLEY, Petitioner-Appellee, and THOMAS CHALKLEY, Respondent-Appellant.

First District (2nd Division)   No. 81-80

Opinion filed August 11, 1981.

Doss, Puchalski, Keenan, Bargiel & Dicks, Ltd., of Chicago (Owen L. Doss, of counsel), for appellant.

Pamela J. Hutul, of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Petitioner Barbara Chalkley (Barbara) sought modification of the maintenance (formerly alimony) provisions of her 1975 divorce decree. That decree had incorporated the terms of a marriage settlement agreement entered into by Barbara and respondent Thomas Chalkley (Thomas). After receiving the testimony of the two parties and hearing argument of their counsel, the circuit court raised Thomas' monthly maintenance obligation to Barbara from $1,500 to $2,200. In appealing this result, Thomas explicitly contends that the terms of the settlement agreement precluded the court from altering the maintenance provisions on the grounds upon which Barbara proceeded. Obliquely, Thomas also argues that if the court was indeed not restrained from modifying these provisions, its decision was an abuse of discretion.

Pursuant to a complaint for divorce (Ill. Rev. Stat. 1975, ch. 40, par. 1

*et seq.*, repealed, 1977 Ill. Laws 2702-03) filed by Barbara, the circuit court of Cook County entered a decree dissolving the marriage of Barbara and Thomas on November 20, 1975. Incorporated into that decree was a lengthy and detailed marriage settlement agreement reached by the parties. Among the terms of the agreement was a section entitled "support for wife and children." Thereunder, Thomas was obligated to pay Barbara the sum of $4,000 each month until the occurrence of any one of several listed events.

One of those events was the passage of the date June 1, 1980. On that date, Thomas' obligation to provide general support for his two daughters was to cease,[1] and the regular monthly alimony obligation was to be reduced to $1,500, plus any sums otherwise owing under other provisions of the agreement (which are not relevant to this case).

The agreement also contained a section entitled "cost of living adjustment" (Paragraph 5). Under that provision, any payments which Thomas was otherwise obligated to make to Barbara were to automatically increase by 25% if the Consumer Price Index for Chicago had increased by 36% from a stated base figure and if Thomas' income had increased by 72% from a stated base figure.

On June 17, 1980, Barbara filed a petition for modification of the divorce decree. As relevant to this appeal, the petition alleged that Barbara had reason to believe that the terms of Paragraph 5 of the agreement had been met, and that Thomas' monthly maintenance obligation should have increased by $1,000 as of May 1980. The petition also alleged that Thomas' circumstances had "appreciated considerably" since the entry of the decree, while Barbara's needs during the same period had increased greatly "over and above the inflationary and Consumer Price increases." Barbara therefore requested, among other things, that the court order a 25% increase under Paragraph 5 in the monthly $1,500 maintenance obligation, as well as an increase in maintenance to an amount "consistent with the income of [Thomas] and the needs of [Barbara]."

The circuit court conducted a hearing on the petition on December 12, 1980. Thomas was called as a section 60 witness (Ill. Rev. Stat. 1979, ch. 110, par. 60) by Barbara, and later returned to the stand as a witness on his own behalf. His testimony at both instances concerned the then present status of his income. Thomas is an ophthalmological surgeon who practices in Chicago. He also owns a farm in Wisconsin. In 1974, the year in which the income base figure for use in Paragraph 5 was set, Thomas had an adjusted gross income of $102,171. In 1979, his adjusted professional income from his partnership was approximately $171,000, a figure which

---

[1] Thomas remained obligated to provide certain specialized types of support, such as college education and extraordinary medical care.

Barbara does not dispute. Thomas estimated that his earnings in 1980 through the date of the hearing were $197,000 from his work as a surgeon, a net loss from his farm of $80,000, leaving him with a 1980 income of $117,000. Thomas also testified to over $500,000 in indebtedness. Barbara disputes these figures, estimating that Thomas' income as a surgeon for 1980 was between $208,000 and $220,000, and that his farm loss was $78,000. This would leave Thomas with an adjusted gross income of between $130,000 and $142,000. The circuit court made no specific findings on this matter, determining only that "the disposable income of Thomas Chalkley is greater than that stated as his adjusted gross income, and he is able to pay increased maintenance."

Barbara testified on her own behalf. She related that she received a bachelor's degree in speech therapy in 1955, but let her certification lapse during the marriage. In 1976, she obtained employment as a real estate salesperson. She quit that occupation in 1979 because of the long hours and poor income. In 1980, Barbara enrolled in Loyola University to receive a Masters degree in social work.

Barbara's testimony on her alleged increased need essentially clarified the items listed on an expense affidavit filed in the case, which compared her monthly cost of living at the time of the divorce (1975) with that at the time of the hearing (1980). Barbara stated that her monthly assessments at her co-op apartment had increased from $300 to $525. Additionally, she anticipated a monthly special assessment of $180. Her electric bill had risen from $5.12 to $24.92. Food costs rose from $242.50 to $537.50, due in part to the fact that Barbara ate out more while attending school. Expenses for personal items (such as haircuts) rose from $25 to $62.50. Medical insurance, which Barbara did not carry in 1975, was $62.14. Telephone service rose from $28 to $60, largely because her two daughters were away at college, necessitating long distance calling. Household repairs rose from $80 to $115. Barbara spent $1,200 per year on vacations by 1980. Withholding for income taxes, not done in 1975, was $300 per month in 1980. Other miscellaneous expenses rose from $225 to $290. Additionally, Barbara estimated that her tuition costs were $300 per month and that transportation, due largely to school-related activities, rose from $100 to $350. Barbara also stated that in 1975 she had a car costing $100 per month to maintain, which car was later sold. She desired to buy a new car, and expenses for purchase and use would run $436 per month. Her attorney stipulated during Barbara's testimony that all of the costs had increased somewhat from inflation, but to an unknown extent. Thomas did not successfully refute the validity of Barbara's testimony as to these expenses.

The court issued the following written findings incorporated into its order: (1) that Barbara was not entitled to rehabilitative maintenance, and

(2) that she could also not maintain the standard of living to which she was accustomed during the marriage solely upon the sum to which she was entitled by the divorce decree. The court therefore ordered that the decree be modified and that the maintenance be increased by $700 per month, an increase of 46 2/3%.

## I

Thomas challenges the validity of the circuit court's modification order, contending that the marriage settlement agreement incorporated into the court's initial divorce decree limited the circumstances in which maintenance could be modified *due to inflation* to the provisions of Paragraph 5.[2]

Except for terms concerning the support, custody, or visitation of children, the judgment entered in a dissolution of marriage proceeding may expressly preclude or limit modification of the terms set forth therein if the separation agreement so provides. (Ill. Rev. Stat. 1979, ch. 40, par. 502(f).) By permitting the parties to determine the future modifiability of their agreement, the statute maximizes the advantages of careful future planning and eliminates uncertainties based on the fear of subsequent motions to increase or decrease the obligations of the parties. (Ill. Ann. Stat., ch. 40, par. 502, Historical and Practice Notes, at 403 (Smith-Hurd 1980), citing 9A Uniform Laws Annotated, Uniform Marriage and Divorce Act §306, Commissioner's Note, at 138 (1973).) However, in order to take advantage of this statutory provision, the parties must express such an intent in clear language. *Simmons v. Simmons* (1979), 77 Ill. App. 3d 740, 743, 396 N.E.2d 631; see also *In re Support of Bowman* (1980), 89 Ill. App. 3d 110, 411 N.E.2d 567; *Dull v. Dull* (1979), 73 Ill. App. 3d 1015, 392 N.E.2d 421.

■■ Our examination of the settlement agreement in this case convinces us that Thomas and Barbara failed to adequately indicate that it was their intention to limit modification of maintenance *due to inflation* only to the terms of Paragraph 5. Nowhere in that provision is there language similar to that in *Simmons*: " 'in no event is the amount of alimony to be modifiable except for death or remarriage of wife.' " (77 Ill. App. 3d 740, 741.) Instead, Thomas merely infers from the whole agreement that Paragraph 5 was to be the sole means by which maintenance could be altered on account of inflation. We believe that, had the parties intended that which Thomas now asserts, they would have specifically recited such in the agreement. Since they did not, we find that Thomas has failed to

---

[2] This was Thomas' theory at the hearing, in his reply brief to this court, and at oral argument. In his appellant's brief, Thomas argued that Paragraph 5 constituted the sole means by which maintenance could be modified, regardless of other circumstances. In our opinion, he has abandoned this position, and we will not address it.

demonstrate that the agreement comports with section 502(f). The circuit court's action increasing Barbara's maintenance entitlement therefore does not violate either the terms of its initial divorce decree or section 502(f).

## II

A contention is made in Thomas' brief that Barbara failed to demonstrate that her circumstances had substantially changed so as to authorize the circuit court to modify the maintenance provisions of its divorce decree, and that the court's so doing was an abuse of its discretion.

Provisions of a judgment of dissolution of marriage which concern maintenance may be modified only upon a showing of a substantial change in circumstances. (Ill. Rev. Stat. 1979, ch. 40, par. 510(a).) The burden in demonstrating the alleged substantial change in circumstances is on the party seeking the relief. (*In re Marriage of Potter* (1980), 88 Ill. App. 3d 606, 608, 410 N.E.2d 999.) In determining whether and to what degree a maintenance award shall be modified, the circuit court is to consider the same factors which, under the statute, are to be assessed in making the initial award. (*In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 680, 402 N.E.2d 332; Ill. Ann. Stat., ch. 40, par. 510, Historical and Practice Notes, at 699 (Smith-Hurd 1980), referring to Ill. Rev. Stat. 1979, ch. 40, par. 504.) A modification of a maintenance award will not be set aside on review unless the circuit court clearly abused its discretion. *Shive v. Shive* (1978), 57 Ill. App. 3d 754, 759, 373 N.E.2d 557, *appeal denied* (1978), 71 Ill. 2d 606.

■■ In order for this court to carry out its review of a circuit court decision in a case of this nature, there must be some indication in the record as to the basis of that decision. At a minimum, the record should demonstrate that the lower court resolved any evidentiary conflicts, considered the applicable statutory provisions, and correctly applied those rules to the ' evidence. (See generally *In re Marriage of Auer* (1980), 86 Ill. App. 3d 84, 87, 407 N.E.2d 1034, *appeal denied* (1980), 81 Ill. 2d 600 (record should indicate that court considered relevant statutory factors in making child custody award).) Here, the record is barren as to the circuit court's determinations on these matters. We find no indication of the court's judgment concerning the evidence on Thomas' allegedly greater income, Barbara's allegedly greater need, and the causes underlying such. Instead, the record before us merely consists of the testimony of the parties, the argument of their counsel, and general "findings" in the order which increased the maintenance by over 46%.

We are unable to assess the validity of the circuit court's decision on such a scanty record. Therefore, we find it necessary to remand the case

to give the circuit court the opportunity to indicate on the record its rationale underlying the exercise of discretion which it undertook.[3] Only then will this court be in a position to determine whether Barbara has indeed demonstrated a substantial change in circumstances so as to warrant the circuit court to exercise its discretion and to increase Thomas' maintenance obligation.[4]

For these reasons, we vacate the order of the circuit court of Cook County and remand this case for such action and disposition as is consistent with this opinion.

Judgment vacated and remanded.

STAMOS and PERLIN, JJ., concur.

---

[3] We note that Barbara's evidence in this record as to her increased expenses rests almost entirely upon allegations of the impact of inflation. Whether this factor standing alone is an appropriate basis for modification of maintenance in this case is particularly questionable in light of the specific terms of Paragraph 5, which at the least indicates the parties' general understanding concerning the relationship of inflation to the maintenance obligation. This court has not often approved increases in maintenance or child support based solely on inflation. Compare *Bellow v. Bellow* (1981), 94 Ill. App. 3d 361, 368, 419 N.E.2d 924, and *Goldberg v. Goldberg* (1975), 30 Ill. App. 3d 769, 772, 332 N.E.2d 710, with *Shive v. Shive* (1978), 57 Ill. App. 3d 754, 761-62, and *Baker v. Baker* (1977), 53 Ill. App. 3d 186, 192, 368 N.E.2d 379.

[4] Our decision neither holds nor intimates that the circuit court must make specific, detailed findings on each factor it considers pursuant to section 504 or otherwise. However, we do require that the record contain some indication as to the reasoning of the circuit court in making an exercise of its discretionary powers in this type of proceeding.