Filed 12/5/01 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2001 ND 193

Conrad R. Toni, Plaintiff and Appellee

v.

Sheila A. Toni, Defendant and Appellant

No. 20010084

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Georgia Dawson, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Maureen Holman, Serkland Law Firm, P.O. Box 6017, Fargo, N.D. 58108-

6017, for plaintiff and appellee.

LaDonne R. Vik, Nilles, Hansen & Davies, Ltd., P.O. Box 2626, Fargo, N.D. 58108-2626, for defendant and appellant.

Toni v. Toni

No. 20010084

VandeWalle, Chief Justice.

[¶1] Sheila A. Toni appealed from an order denying her motion to modify a divorce decree under N.D.C.C. § 14-05-24.  In the motion Sheila Toni asked the trial court to modify a spousal support award granted in a divorce judgment which incorporated her agreement with Conrad R. Toni to divest the court of jurisdiction to modify the amount and term of spousal support set forth in the agreement.  We conclude the parties’ agreement, which was found by the court in the divorce action to be “fair, just and equitable,” is enforceable under North Dakota law and divested the court of jurisdiction to modify the spousal support award.  We therefore affirm.

I

[¶2] Conrad and Sheila Toni were married from July 9, 1971, until May 10, 1999.  The couple had three children during the marriage, and one of them was a minor at the time of the divorce.  Both parties are employed in Fargo: Conrad as a urologist, and Sheila as a clerk at Barnes & Noble Bookstore.

[¶3] Before their divorce was granted, the parties entered into a “Custody and Property Settlement Agreement” which comprehensively addressed all divorce issues.  The agreement stated that, although Conrad had been represented by counsel, Sheila “has not been represented by counsel and has been informed that Maureen Holman does not represent her interests in this matter but has not sought such independent counsel and enters into this custody and property settlement agreement of her own free will.”  The agreement also stated, “[b]oth parties agree that each has made a full disclosure to the other of all assets and liabilities and is satisfied that this custody and property settlement agreement is fair and equitable,” and “[e]ach party has entered into this custody and property settlement agreement intending it to be a full and final settlement of all claims of every kind, nature, and description which either party may have or claim to have, now or in the future, against the other and, except as is expressly provided herein to the contrary, each is released from all further liability of any kind, nature or description whatsoever to the other.”

[¶4] The agreement provided for “joint physical custody” of the couple’s minor daughter, who was expected to graduate from high school in May 1999.  The agreement divided the parties’ real property, stocks and retirement accounts, but did not disclose the value of those assets.  The agreement also contained the following provision on spousal support:

Commencing May 1, 1999, Conrad shall pay to Sheila the sum of $5,000 per month as and for spousal support.  Said payments will continue on the first day of each month thereafter until the death of either party, Sheila’s remarriage, or until the payment due on April 1, 2002 has been made.  It is intended that the spousal support payable to Sheila shall be included in Sheila’s gross income for income tax purposes and shall be deductible by Conrad.  The court shall be divested of jurisdiction to modify in any manner whatsoever the amount and term of the spousal support awarded to Sheila immediately upon entry of the judgment and decree herein.  The court shall retain jurisdiction to enforce Conrad’s obligation to pay spousal support to Sheila.

[¶5] At the divorce hearing, Conrad appeared with his attorney, but Sheila, who had admitted service of the summons and complaint, did not personally appear.  The trial court granted the divorce and, finding the parties’ agreement to be “a fair, just and equitable settlement,” incorporated its provisions into the divorce decree.

[¶6] In November 2000, Sheila moved under N.D.C.C. § 14-05-24 to modify the spousal support award.  Sheila claimed in an affidavit that Conrad earned $14,000 per month in “take-home pay” when they married and she believed he continued to earn a “similar” amount per month, while she earns $1,000 per month working full-time as a clerk at Barnes & Noble Bookstore.  Sheila further alleged, although income from assets she received in the divorce had paid her about $2,700 per month, the “return on those assets this year has been almost nothing.”  Sheila estimated her monthly expenses to be $5,340, and said her accountant informed her she could convert a retirement account into an annuity producing $2,000 per month in additional income, but she is “afraid to convert this to an annuity because I believe I need it for my retirement.”  Sheila claimed she has a “neurological condition” that causes her trouble sleeping, and she stayed home with the children during her marriage to Conrad rather than pursuing her own career.  Sheila also stated:

I met Bob Boman after I separated from my husband.  I had agreed to a reduced three-year term for spousal support because Dr. Boman was in his residency following medical school.  Once he finished, we had agreed that he would pay the family expenses.  Conrad and I had decided to divorce in August and I met Bob in October.  Bob and I planned to marry after the divorce.  Bob and I are no longer together and I do not receive any money from him.

[¶7] The parties agreed to submit to the trial court the sole issue whether the provision of the parties’ agreement divesting the court of jurisdiction to modify spousal support was valid under North Dakota law, and to stay any proceedings on the merits of the motion to modify the spousal support award.  The trial court dismissed Sheila’s motion, ruling “the parties entered into a binding contract which was incorporated into the judgment and . . . the court now lacks jurisdiction to modify spousal support.” 

II

[¶8] We assume, for purposes of argument only, that Sheila’s claims of lowered investment yields and a failed relationship are sufficient to constitute a material change of circumstances to support a motion to modify spousal support.  
See, e.g.
,  
Lohstreter v. Lohstreter
, 2001 ND 45, ¶ 13, 623 N.W.2d 350 (noting a material change of circumstances is something which substantially affects a party’s financial ability and needs and which is not originally contemplated by the parties); 
compare
 
Johnson v. Johnson
, 2001 ND 109, ¶ 8, 627 N.W.2d 779 (holding breakup of wife’s engagement to fiancee after judgment is not newly discovered evidence for granting new trial).  The legal question in this case is whether the parties’ divorce stipulation regarding spousal support can divest the trial court of its statutory authority to modify the amount and duration of support.  Questions of law are fully reviewable on appeal.  
See
 
Lawrence v. Delkamp
, 2000 ND 214, ¶ 7, 620 N.W.2d 151.

[¶9] At the pertinent time, N.D.C.C. § 14-05-24 allowed a trial court to compel either party to a divorce to make such suitable allowance for support as the court deemed just:

When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively.  The court from time to time may modify its orders in these respects.
(footnote: 1)

Under N.D.C.C. § 14-05-24, the trial court generally retains continuing jurisdiction to modify spousal support, child support, and child custody upon a showing of changed circumstances.  
See
 
Kopp v. Kopp
, 2001 ND 41, ¶ 5, 622 N.W.2d 726.  This Court has construed the statute, however, to not allow a trial court continuing jurisdiction to modify a final property distribution, 
Johnson
, 2001 ND 109, ¶ 8, 627 N.W.2d 779, and we have held when a trial court makes no initial award of spousal support and fails to expressly reserve jurisdiction over the issue, the court subsequently lacks jurisdiction to award spousal support.  
Becker v. Becker
, 262 N.W.2d 478, 484 (N.D. 1978).  Sheila argues N.D.C.C. § 14-05-24 gives a trial court the unconditional right to modify a spousal support award, regardless of any agreement by divorcing parties purporting to divest the court of that power.  

[¶10] We encourage peaceful settlements of disputes in divorce matters.  
See
 
Clooten v. Clooten
, 520 N.W.2d 843, 846 (N.D. 1994); 
Wolfe v. Wolfe
, 391 N.W.2d 617, 620 (N.D. 1986); 
Seablom v. Seablom
, 348 N.W.2d 920, 924 (N.D. 1984); 
Fleck v. Fleck
, 337 N.W.2d 786, 791 (N.D. 1983); 
Peterson v. Peterson
, 313 N.W.2d 743, 745 (N.D. 1981); 
Galloway v. Galloway
, 281 N.W.2d 804, 807 (N.D. 1979).  It is the promotion of the strong public policy favoring prompt and peaceful resolution of divorce disputes that generates a judicial bias in favor of the adoption of a stipulated agreement of the parties.  
See
 
Laude v. Laude
, 1999 ND 203, ¶ 7, 600 N.W.2d 848; 
Crawford v. Crawford
, 524 N.W.2d 833, 836 (N.D. 1994).  We have also noted a person may waive “all rights and privileges to which a person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the constitution, provided such rights and privileges rest in the individual who has waived them and are intended for his benefit.”  
Gajewski v. Bratcher
, 221 N.W.2d 614, 628 (N.D. 1974).  

[¶11] In line with these principles, this Court has held a trial court has continuing jurisdiction to modify child support notwithstanding parental divorce settlement agreements prohibiting or limiting the court’s modification powers, because the right to child support belongs to the child rather than to the parent, rendering such agreements violative of public policy and invalid.  
See
 
Smith v. Smith
, 538 N.W.2d 222, 226 (N.D. 1995); 
Sullivan v. Quist
, 506 N.W.2d 394, 397 (N.D. 1993); 
Reimer v. Reimer
, 502 N.W.2d 231, 233 (N.D. 1993); 
Rueckert v. Rueckert
, 499 N.W.2d 863, 867-68 (N.D. 1993); 
State of Minnesota v. Snell
, 493 N.W.2d 656, 659 (N.D. 1992); 
Tiokasin v. Haas
, 370 N.W.2d 559, 562 (N.D. 1985).  On the other hand, we have encouraged spousal support awards based on agreements between the divorcing parties, and noted those agreements “should be changed only with great reluctance by the trial court.”  
Huffman v. Huffman
, 477 N.W.2d 594, 597 (N.D. 1991).  
See also
 
Greenwood v. Greenwood
, 1999 ND 126, ¶ 17, 596 N.W.2d 317; 
Wheeler v. Wheeler
, 548 N.W.2d 27, 30 (N.D. 1996); 
Becker
, 262 N.W.2d at 484; 
Bingert v. Bingert
, 247 N.W.2d 464, 467-68 (N.D. 1976).  Although this Court has often said a spousal support award based on an agreement between the parties can be modified upon a showing of material change of circumstances, 
see, e.g.
, 
Wheeler v. Wheeler
, 419 N.W.2d 923, 925 (N.D. 1988); 
Cook v. Cook
, 364 N.W.2d 74, 76 (N.D. 1985); 
Eberhart v. Eberhart
, 301 N.W.2d 137, 143 (N.D. 1981), we have not been confronted with a contractual settlement clause, adopted by the trial court and incorporated into the divorce decree, attempting to divest the court of its continuing jurisdiction to  modify the amount and term of the spousal support award.

[¶12] Jurisdictions differ over their treatment of agreements between divorcing couples seeking to limit a court’s ability to modify spousal support arrangements.  
See generally
 Annot., 
Divorce: Power of court to modify decree for alimony or support of spouse which was based on agreement of parties
, 61 A.L.R.3d 520 (1975); 24A Am. Jur. 2d 
Divorce and Separation
 § 817 (1998).  Some jurisdictions, by statute, specifically allow parties to enter into nonmodifiable spousal support agreements.  
See, e.g.
, 
In re Marriage of Ousterman
, 54 Cal. Rptr. 2d 403, 405 (Cal. App. 1996) (construing Cal. Family Code § 3651(d) and predecessor statute); 
In re Marriage of Chalkley
, 426 N.E.2d 237, 240 (Ill. App. 1981) (construing 750 Ill. Comp. Stat. Ann. 5/502(f)); 
Bair v. Bair
, 750 P.2d 994, 997 (Kan. 1988) (construing Kan. Stat. Ann. § 60-1610(b)(3)); 
Hamilos v. Hamilos
, 450 A.2d 1316, 1320 (Md. App. 1982) (construing Md. Code Ann., Family Law § 8-103(c)(2)); 
Santillan v. Martine
, 560 N.W.2d 749, 750 (Minn. App. 1997) (construing Minn. Stat. § 518.552); 
Lueckenotte v. Lueckenotte
, 34 S.W.3d 387, 392 (Mo. 2001) (construing Mo. Rev. Stat. § 452.325.6); 
In re Marriage of Pearson
, 965 P.2d 268, 274 (Mont. 1998) (construing Mont. Code Ann. § 40-4-201(6)); 
Pendleton v. Pendleton
, 471 S.E.2d 783, 784 (Va. App. 1996) (construing Va. Code Ann. § 20-109); 
Yearout v. Yearout
, 707 P.2d 1367, 1369 (Wash. App. 1985) (construing Wash. Rev. Code § 26.09.070(7)).  
See also
 Uniform Marriage and Divorce Act § 306(f), 9A U.L.A. 249 (1998).  Other jurisdictions, by statute, specifically prohibit nonmodifiable spousal support agreements.  
See, e.g.
, 
Vorfeld v. Vorfeld
, 804 P.2d 891, 897 (Hawaii App. 1991) (construing Haw. Rev. Stat. §§ 572-22 and 580-47).

[¶13] Several jurisdictions, by judicial decision, have allowed contractual waivers of the right to seek spousal support modification.  
See, e.g.
, 
Beasley v. Beasley
, 707 So.2d 1107, 1108 (Ala. Civ. App. 1997); 
Rockwell v. Rockwell
, 681 A.2d 1017, 1021 (Del. Supr. 1996); 
Kilpatrick v. McLouth
, 392 So.2d 985, 986 (Fla. App. 1981); 
Ashworth v. Busby
, 526 S.E.2d 570, 572 (Ga. 2000); 
Voigt v. Voigt
, 670 N.E.2d 1271, 1280 (Ind. 1996); 
Staple v. Staple
, 616 N.W.2d 219, 223 (Mich. App. 2000); 
Karon v. Karon
, 435 N.W.2d 501, 503-04 (Minn. 1989) (upholding right to waive modification before right was legislatively established); 
Moseley v. Mosier
, 306 S.E.2d 624, 627 (S.C. 1983); 
Nichols v. Nichols
, 469 N.W.2d 619, 623 (Wis. 1991).  Other jurisdictions, through court decisions, have disallowed contractual waivers of the right to seek modification of spousal support.  
See, e.g.
, 
Norberg v. Norberg
, 609 A.2d 1194, 1196 (N.H. 1992); 
Matter of Marriage of Eidlin
, 916 P.2d 338, 341 (Or. App. 1996).

[¶14] We think the reasoning of the current trend of jurisdictions which allow divorcing couples to agree to make spousal support nonmodifiable is persuasive.

[¶15] This result is consistent with our prior caselaw on spousal support.  In 
Becker
, 262 N.W.2d at 484, this Court held, unless a trial court makes an initial award of spousal support or expressly reserves jurisdiction over the issue, the court lacks jurisdiction under N.D.C.C. § 14-05-24 to subsequently modify its decision and award spousal support.  The original divorce decree in 
Becker
 stated, “‘neither party shall pay alimony to the other,’” and that language was incorporated from the parties’ stipulation and property settlement agreement found to be “fair and equitable” by the trial court.  
Id.
 at 480, 484.  This Court ruled the contract provision was unambiguous, and the “parties are bound by their contract provision for no alimony even if the court is not.”  
Id.
 at 484.  We see no valid distinction between a stipulation to waive all spousal support at the time of the initial divorce decree and a waiver of future modification.  If a spouse can waive all right to spousal support, it logically follows that a spouse can waive the right to modification.  
See, e.g.
, 
Kilpatrick
, 392 So.2d at 986; 
Staple
, 616 N.W.2d at 226-27.  

[¶16] In response to the argument that contracting parties cannot divest a court of its jurisdiction under a statute similar to N.D.C.C. § 14-05-24, the court in 
Karon
, 435 N.W.2d at 503, reasoned:

It is not the parties to the stipulation who have divested the court of ability to relitigate the issue of maintenance.  The court had the authority to refuse to accept the terms of the stipulation in part or 
in toto
.  The trial court stands in place and on behalf of the citizens of the state as a third party to dissolution actions.  It has a duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all.  The court did so here and approved the stipulation and incorporated the terms therein in its decree.  Thus, the decree is final absent fraud.

[¶17] Section 14-05-24, N.D.C.C., does not expressly prohibit nonmodification  agreements.  If the legislature intended to prevent parties from entering into nonmodifiable spousal support agreements, it could have expressly prohibited them.  
See
 
Nichols
, 469 N.W.2d at 623.  
See also
 
Bland v. Comm’n on Medical Competency
, 557 N.W.2d 379, 384 (N.D. 1996) (holding because statute did not expressly prohibit appeals to this Court, the legislature did not intend to forbid such appeals).  We recognize there can be no waiver of statutory rights if the waiver would be against public policy.  
See
 N.D.C.C. § 1-02-28; 
Steckler v. Steckler
, 492 N.W.2d 76, 78 n.1 (N.D. 1992).  However, we do not believe allowing parties to agree that spousal support is nonmodifiable violates the public policy of this state.

[¶18] Our caselaw invalidating parental divorce stipulations prohibiting or limiting a court’s modification powers over child support is governed by public policy principles entirely different from those present when reviewing an agreement concerning spousal support.  While a spousal support agreement “serves primarily to determine the interests of the contracting parties themselves,” a child support agreement “directly affects the interests of the children of the marriage, who have the most at stake as a result of such an agreement but who have the least ability to protect their interests.”  
Tiokasin
, 370 N.W.2d at 562.  “Put simply, the parties to a [spousal support] agreement are both grown-ups, free to bargain with their own legal rights.”  
Voight
, 670 N.E.2d at 1274.  Freedom to contract on terms not specifically prohibited by statute, 
see
 
RLI Ins. Co. v. Heling
, 520 N.W.2d 849, 854 (N.D. 1994), is the major public policy question presented here.

[¶19] Permitting parties to determine the future modifiability of their spousal support agreements maximizes the advantages of careful future planning and eliminates uncertainties based on the fear of subsequent motions to increase or decrease the obligations of the parties.  
See
 
Chalkley
, 426 N.E.2d at 240; Uniform Marriage and Divorce Act § 306, Comment, 9A U.L.A. at 250.  In 
Staple
, 616 N.W.2d at 228, the court relied on public policy reasons identified by the American Academy of Matrimonial Lawyers (AAML) for validating agreements to waive future modification of spousal support awards:

The AAML comments that “[r]ecognizing and enforcing” the parties’ waiver of modification “does no violence to public policy, and is consistent with the reasonable expectancy interests of the parties.”  The AAML also offers five public policy reasons why courts should enforce duly executed nonmodifiable alimony arrangements: (1) Nonmodifiable agreements enable parties to structure package settlements, in which alimony, asset divisions, attorney fees, postsecondary tuition for children, and related matters are all coordinated in a single, mutually acceptable agreement; (2) finality of divorce provisions allows predictability for parties planning their postdivorce lives; (3) finality fosters judicial economy; (4) finality and predictability lower the cost of divorce for both parties; (5) enforcing agreed-upon provisions for alimony will encourage increased compliance with agreements by parties who know that their agreements can and will be enforced by the court.

(footnote omitted).  It has been noted that honoring and enforcing nonmodification agreements will “discourage former spouses from using the modification process ‘repeatedly for vexatious purposes only.’” 
Voight
, 670 N.E.2d at 1279.  In 
Karon
, 435 N.W.2d at 504, the court also found “compelling” amicus curiae’s argument that setting aside the parties’ spousal support agreement incorporated into the divorce decree would be “insulting and demeaning to women,” because it would mean “the state must protect them in the manner it protects children in the role of parens patriae,” resulting “in chaos in the family law field and declining respect for binding agreements as well.” 

[¶20] Nullifying waivers of future spousal support modifications would discourage the settlement of divorce cases, 
see
 
Staple
, 616 N.W.2d at 227; 
Nichols
, 469 N.W.2d at 627, contrary to our public policy favoring peaceful settlements of disputes in divorce matters.  
See, e.g.
, 
Clooten
, 520 N.W.2d at 846.  We conclude agreements by divorcing parties to make spousal support nonmodifiable and which are adopted by the trial court do not violate N.D.C.C. § 14-05-24 or public policy.

[¶21] The parties’ agreement in this case is not ambiguous, but is clear and unequivocal: “The court shall be divested of jurisdiction to modify in any manner whatsoever the amount and term of the spousal support awarded to Sheila immediately upon entry of the judgment and decree herein.”  Similar stipulations have been enforced in other jurisdictions.  
See, e.g.
, 
Ashworth
, 526 S.E.2d at 571; 
Varn v. Varn
, 248 S.E.2d 667, 668 (Ga. 1978); 
Simmons v. Simmons
, 396 N.E.2d 631, 633-

34 (Ill. App. 1979).  Sheila acknowledged full disclosure of assets and liabilities; Conrad’s attorney did not represent her, she did not obtain counsel, and entered into the agreement “of her own free will;” and the agreement is “fair and equitable” and is intended “to be a full and final settlement of all claims of every kind. . .”  The divorce court found the agreement to be “a fair, just and equitable settlement” of the parties’ divorce action and incorporated the provisions of the agreement into the divorce decree.  We conclude the trial court correctly ruled it had no jurisdiction under N.D.C.C. § 14-05-24 to entertain Sheila’s motion to modify the spousal support award.

[¶22] Our holding in this case, however, is narrow.  This case is not a direct appeal from the original divorce judgment challenging the terms of the parties’ agreement.  
See
 
Weber v. Weber
, 1999 ND 11, ¶ 1, 589 N.W.2d 358; 
Weber v. Weber
, 548 N.W.2d 781, 782 (N.D. 1996).  Nor is this case an appeal from the denial of a N.D.R.Civ.P. 60(b) motion for relief from the divorce judgment based on allegations of mistake, inadvertence, excusable neglect, fraud, misrepresentation, or other misconduct of an adverse party, or that it is no longer equitable that the judgment should have prospective application.  
See
 
Crawford
, 524 N.W.2d at 835.  Sheila has not argued the parties’ agreement is either procedurally unconscionable in the sense she lacked independent counsel and did not voluntarily enter into the agreement, or substantively unconscionable in the sense enforcement of the agreement will force her onto public assistance.  
See
 
Matter of Estate of Lutz
, 1997 ND 82, ¶¶ 28, 42, 563 N.W.2d 90.  Sheila’s motion was brought under N.D.C.C. § 14-05-24 to modify the spousal support award based on a material change of circumstances.  We simply hold the trial court was without jurisdiction to entertain that motion.

III

[¶23] The trial court’s order is affirmed.

[¶24] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

Carol Ronning Kapsner

William A. Neumann

Maring, Justice, dissenting.

[¶25] I respectfully dissent.  I am of the opinion the parties’ Custody and Property Settlement Agreement did not divest the trial court of jurisdiction to modify the spousal support agreement under N.D.C.C. § 14-05-24.

[¶26] Sheila has raised two issues on appeal.  First, whether a stipulation divesting a court of its statutory power to modify a spousal support award that is incorporated into a divorce decree is enforceable under North Dakota law.  Second, if such stipulations are enforceable, whether the stipulation in this case is an effective waiver of the statutory right to modification under N.D.C.C. § 14-05-24.

I

[¶27] In regard to the first issue, the majority correctly points out that most jurisdictions that allow parties to enter into nonmodifiable spousal support agreements have statutes that specifically permit a provision depriving a court of its power to modify.  We do not have such a statute.  The majority also correctly recognizes that some jurisdictions that do not have such statutes have allowed stipulated waivers of modification and some jurisdictions have disallowed them.  The majority finds the former more persuasive.  I find the latter more persuasive and more consistent with our statutes and prior case law.

[¶28] Section 14-05-24 confers jurisdiction on a trial court to modify spousal support agreements independent of any language contained in the divorce judgment.  
See
 
Wheeler v. Wheeler
, 548 N.W.2d 27, 30 (N.D. 1996) (citing N.D.C.C. § 14-05-24).  The exercise of that authority should not be divested by a provision in a stipulation prohibiting the court from modifying spousal support, which is incorporated into a decree.  If parties are to be permitted to divest a court of jurisdiction given to it by statute, then it should be the Legislature that statutorily permits such agreements.  
See
 
Karon v. Karon
, 435 N.W.2d 501, 505 (Minn. 1989) (Coyne, J., dissenting) (“Since dissolution jurisdiction is statutory, the corollary of the observation that the district court has no power except that delegated by statute is that the district court cannot divest itself of the power validly delegated by statute.”) (citation omitted).  

[¶29] We have consistently concluded trial courts have the power to modify spousal support awards regardless of what the parties may have agreed to in their stipulation.  
See, e.g.
, 
Wheeler v. Wheeler
, 419 N.W.2d 923, 925 (N.D. 1988); 
Cook v. Cook
, 364 N.W.2d 74, 76 (N.D. 1985); 
Eberhart v. Eberhart
, 301 N.W.2d 137, 143 (N.D. 1981).  The majority opinion deviates from these holdings today.  The principle of finality has never applied to spousal support or child support.  If parties need finality and freedom to agree to a definitive spousal support, then we should not modify their agreement for any reason.  Parties, however, should not be able to bind themselves in advance to an amount and duration regardless of what circumstances arise because the right to seek modification of a judgment for spousal support is not only given for the protection of persons obligated to pay and the persons who are entitled to support, but also for the benefit of society.  If a spouse becomes destitute, then society will bear the burden of support. 

[¶30] We are not dealing with contract law in these cases; we are dealing with family law matters.  When, as in this case, a trial court wholly incorporates a settlement agreement into a divorce judgment, the settlement agreement merges with the judgment and “ceases to be independently viable or enforceable.”  
Sullivan v. Quist
, 506 N.W.2d 394, 399 (N.D. 1993); 
accord
 
Jorgenson v. Ratajczak
, 1999 ND 65, ¶ 13, 592 N.W.2d 527.  “Consequently, when a stipulation is incorporated into a divorce judgment, we are concerned only with interpretation and enforcement of the judgment, not with the underlying contract.”  
Botner v. Botner
, 545 N.W.2d 188, 190 (N.D. 1996).  “As such, the court retains management and control over the incorporated stipulation, and remedies can be sought in the divorce action rather than starting afresh with another lawsuit based on the stipulation as a contract.”  
Wagner v. Wagner
, 1999 ND 169, ¶ 10, 598 N.W.2d 855.  A court dealing with family law matters and exercising powers granted by the Legislature cannot divest itself of the power to modify a judgment contrary to legislative will.  
See
 
Miller v. Miller
, 46 N.E.2d 102, 103 (Ill. Ct. App. 1943) (“Grounds for divorce, payment of alimony and modification of the divorce decrees are regulated by statute.  A court, when dealing with such matters, is exercising powers granted by the legislature and cannot, by incorporating . . . a provision [which attempts to deprive a court of its power to modify] in its decree, divest itself of the power to modify contrary to the legislative will.”); 
Wright v. Wright
, 498 P.2d 80, 82 (Kan. 1972) (“[W]here a court has the statutory power to modify a decree for alimony or support, a provision in a decree prohibiting the court from modifying the decree generally or only under certain circumstances is void, and the court may modify the decree notwithstanding such a provision.”); 
Karon
, 435 N.W.2d at 506 (Coyne, J., dissenting) (“The omission of statutory authorization to the parties to limit by agreement the continuing authority of the court [to modify spousal support] must by viewed as purposeful.”).

[¶31] In 
Norberg v. Norberg
, 609 A.2d 1194, 1196 (N.H. 1992) the Supreme Court of New Hampshire reached this very conclusion in construing a statute similar to N.D.C.C. § 14-05-24.  In 
Norberg
, the plaintiff argued the defendant’s express agreement to abstain from seeking modification of spousal support deprived the trial court of its power to modify the spousal support payments under section 458:14, N.H. Rev. Stat. Ann. (1992).  
See
 
Norberg
, at 1196.  Section 458:14 provides:  “The court, upon proper application and notice to the adverse party, may revise and modify any order made by it, may make such new orders as may be necessary, and may award costs as justice may require.”  N.H. Rev. Stat. Ann. § 458:14 (1992).  In rejecting the plaintiff’s argument, the court concluded:

Whether the parties expressly agreed to waive their rights to seek modification of the agreement is irrelevant.  RSA 458:14 grants the court the authority to revise any order made by the court.  This statute is to be liberally construed.  
To rule as the plaintiff suggests would allow the parties to circumvent the statute and defeat its evident purpose
.  We will not allow the parties to effectively divest the court of its statutory authority to modify a decree by merely agreeing that no modification of their agreement shall be sought.  Thus, regardless of the language in the stipulation, the court retains the power to modify orders concerning alimony upon a proper showing of changed circumstances.

Norberg
, at 1196 (citation omitted) (emphasis added).

[¶32] The majority declines to follow the reasoning of 
Norberg
 and instead abrogates the will of the Legislature and concludes a court can divest itself of the power conferred by statute to modify decrees of spousal support.  However, a number of the decisions relied on by the majority are distinguishable from the case at hand and directly conflict with our statutes and prior case law.

[¶33] In 
Beasley v. Beasley
, 707 So.2d 1107, 1108 (Ala. Civ. App. 1997) the parties’ agreement stated it could not be modified unless the parties consented in writing.  However, the decision in 
Beasley
 turned on whether the property rights and the alimony rights were integrated in the agreement.  
Id.
  The court never even addressed the portion of the agreement regarding modification.  The court in 
Beasley
 quotes a large portion of 
DuValle v. DuValle
, 348 So.2d 1067, 1069 (Ala. Civ. App. 1977) as authority for its decision.  
Beasley
, at 1108.  In 
DuValle
 the parties entered into an agreement which provided, in part, “Frank L. DuValle shall not be required to make any other payments, whether as alimony, support,  maintenance, or other allowance, for the benefit of said Elizabeth S. DuValle,” except as provided in the agreement.  
DuValle
, at 1068.  The agreement also provided “‘Except as herein expressly provided, said Elizabeth S. DuValle shall have no claims or rights against said Frank L. DuValle for alimony, dower, homestead, maintenance, support, or other allowance.’”  
Id.
  Despite these provisions, the court held the trial court erred in dismissing the wife’s motion to increase her alimony payments because the evidence indicated the agreement was not integrated.  
Id.
 at 1070.

[¶34] The next decision cited by the majority is 
Rockwell v. Rockwell
, 681 A.2d 1017 (Del. 1996).  
Rockwell
 is distinguishable from the case at hand in that the parties never stipulated to divest the court of jurisdiction at all.  At issue in 
Rockwell
 was whether the statutory standard for modification of alimony applied when parties stipulated to an alimony award.  
Id.
 at 1018.  In concluding that it did not apply, the court reasoned “with regard to alimony awards, the stipulation, merger, or incorporation of the parties
’
 voluntary agreement into a court order does not divest that agreement of its contractual nature.”  
Id.
 at 1021.  Thus, the court held “unlike a prior judicial determination of alimony, the Family Court cannot modify an agreement between the parties regarding alimony, pursuant to the ‘real and substantial change’ statutory standard.”  
Id.
  In contrast, we have stated “[o]nce the settlement agreement is merged into the divorce decree, it is interpreted and enforced as a final judgment of the court, not as a separate contract between the parties.”  
Sullivan
, 506 N.W.2d at 399.  Furthermore, this decision directly conflicts with our prior case law that a spousal support award based on an agreement between the parties can be modified upon a showing of material change of circumstances.  
See, e.g.
, 
Wheeler
, 419 N.W.2d at 925; 
Cook
, 364 N.W.2d at 76; 
Eberhart
, 301 N.W.2d at 143.

[¶35] Relying on 
Voigt v. Voigt
, 670 N.E.2d 1271, 1279 (Ind. 1996), the majority lists Indiana as a jurisdiction which, by judicial decision, has allowed contractual waivers of the right to seek spousal support modification.  However, the decision in 
Voigt
 turned on a statute which provided:  “‘The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent.”  
Id.
 at 1278 (quoting Ind. Code Ann. § 31-

1-11.5-10(c) (West 1979)).  Under Indiana law at the time of 
Voigt
, the Legislature placed severe limitation on the power of courts to even award spousal support.  
Voigt
, at 1276-77.  A court could only award spousal maintenance in three circumstances: (1) When a spouse is physically or mentally incapacitated; (2) If a spouse must forego employment to care for a child who is physically or mentally incapacitated; (3) If a spouse must acquire training or education to obtain a job a spouse may be awarded rehabilitative spousal support for no more than three years.  
Id.
  Neither our Legislature nor this Court has adopted such a  restricted view of spousal support.  
See
 N.D.C.C. § 14-05-24 (court may “make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively”); 
Fox v. Fox
, 2001 ND 88, ¶ 24, 626 N.W.2d 660 (“This Court has adopted the equitable doctrine for spousal support, rejecting the minimalist doctrine.”).   

[¶36] 
Moseley v. Mosier
, 306 S.E.2d 624, 625 (S.C. 1983), cited by the majority, is a child support case.  The parties’ separation agreement provided a set amount of child support.  
Id.
  The defendant argued the trial court erred in finding him in contempt for failure to pay child support in light of the fact that the parties’ agreement was incorporated but not merged into the divorce decree.  
Id.
 at 626.  The defendant argued, since the agreement was not merged into the decree, the plaintiff’s remedy for his failure to pay child support was in contract law, not contempt proceedings.  
Id.
  The court went beyond the issue of whether the court had continuing jurisdiction to modify child support, overruled prior cases, and judicially set-forth the circumstances under which a court has jurisdiction to modify separation agreements.  
Id.
 at 626-27.  Nowhere does the court in 
Moseley
, cite to a statute similar to N.D.C.C. § 14-05-24, which gives a court jurisdiction to modify its spousal support orders.  Furthermore, under South Carolina law, “the construction of a separation agreement is a matter of contract law.”  
Estate of Revis
, 484 S.E.2d 112, 116 (S.C. Ct. App. 1997).  Again, in contrast, under North Dakota law, “[o]nce the settlement agreement is merged into the divorce decree, it is interpreted and enforced as a final judgment of the court, not as a separate contract between the parties.”  
Sullivan
, 506 N.W.2d at 399.

[¶37] In 
Karon
, the stipulation at issue expressly stated:  “Except for the aforesaid maintenance, each party waives and is forever barred from receiving any spousal maintenance whatsoever from one another, and this court is divested from having any jurisdiction whatsoever to award temporary or permanent spousal maintenance to either of the parties.”  435 N.W.2d at 502.  Unlike the stipulation in 
Karon
, the stipulation at issue in this case contained no express waiver of the statutory right to modification.  Also, the party seeking modification in 
Karon
 was represented by counsel when she entered into the agreement.  
Id.
 at 508 (Simonett, J., dissenting).  Sheila, the party seeking modification in this case, was not.  Furthermore, 
Karon
, which was a four to three decision, has been superseded by statute.  
See
 
Loo v. Loo
, 520 N.W.2d 740, 746 n.6 (Minn. 1994).  Following the release of 
Karon
, the Legislature added protection for parties waiving modification of maintenance by stipulation.  Under the current Minnesota statute, nonmodifiable spousal support agreements are only enforceable “if the court makes specific findings that the stipulation is fair and equitable, is supported by consideration described in the findings, and that full disclosure of each party’s financial circumstances has occurred.”  Minn. Stat. § 518.552, subd. 5 (1996).  

[¶38] The decision of the Supreme Court of Wisconsin in 
Nichols v. Nichols
, 469 N.W.2d 619 (Wis. 1991) can also be distinguished.  The Wisconsin Supreme Court decided to recognize an exception to its general rule that maintenance is always subject to modification.  It concluded a party is estopped from seeking modification if:

both parties entered into the stipulation freely and knowingly, . . . the overall settlement is fair and equitable and not illegal or against public policy, and . . . one party subsequently seeks to be released from the terms of the court order on the grounds that the court could not have entered the order it did without the parties’ agreement.

Nichols
, at 104 (quoting 
Rintelman v. Rintelman
, 348 N.W.2d 498 (Wis. 1984)).  Therefore, the Wisconsin Supreme Court will enforce a waiver of modification only if the requirements of the doctrine of estoppel are established.  
Id.

[¶39] The other cases cited by the majority, 
Kilpatrick v. McLouth
, 392 So.2d 985 (Fla. Dist. Ct. App. 1981); 
Ashworth v. Busby
, 526 S.E.2d 570, 572 (Ga. 2000); and 
Staple v. Staple
, 616 N.W.2d 219 (Mich. Ct. App. 2000), are distinguishable from this case on their facts and from the conclusion reached by the majority.  I will analyze them in the second part of my dissent.

[¶40] The majority contends that the reasoning of the jurisdictions which allow waiver of modification is consistent with our prior decision in 
Becker v. Becker
, 262 N.W.2d 478, 484 (N.D. 1978).  In 
Becker
 we held, unless a trial court makes an initial award of spousal support or expressly reserves jurisdiction over the issue, the court lacks jurisdiction under N.D.C.C. § 14-05-24 to modify its decision and award spousal support.  
Id.
  The majority reasons, “If a spouse can waive all right to spousal support, it logically follows that a spouse can waive the right to modification.”  I do not agree with this logic.  When a trial court orders spousal support, it does so to accomplish a variety of objectives; i.e., rehabilitation, economic parity, equalization of the burden of divorce, etc.  It logically follows that if spousal support is not ordered, the need to attain these objectives did not exist.  If the need did not exist, modification under N.D.C.C. § 14-05-24 is not necessary because there is no objective the modification would further.  However, when spousal support is ordered initially, trial courts must have the power to modify the spousal support award in order to accomplish the objective for which it was originally ordered.

[¶41] Like this Court, Oregon courts recognize that “when no spousal support was awarded in the original decree, the court cannot modify the decree to provide spousal support.”  
See
 
Pope v. Pope
, 718 P.2d 735, 737 (Or. 1986).  At the same time, however, Oregon courts recognize the rule that “specific language in the decree or in an underlying property settlement incorporated in the decree does not bar the court from modifying the decree as it relates to spousal support.”  
Id.
 at 737-38  (citations and footnote omitted); 
accord
 
Matter of Eidlin
, 916 P.2d 338, 341 (Or. Ct. App. 1996) (stating that parties cannot stipulate to deprive a court of its statutory authority to modify a spousal support award).  The reason for this rule and the reason we should not travel down the path taken by the majority opinion was well summarized by the Supreme Court of Oregon in 
Prime v. Prime
, 139 P.2d 550 (Or. 1943).

The right to alimony is, therefore, based upon the statute and not upon any contractual obligations.  The law is designed for the protection of the parties and to promote the welfare of society.  How, then, can parties, by any private agreement, oust the court of jurisdiction to regulate the payment of alimony when the status of the parties justifies a modification?  Any agreement of the parties in reference to the payment of alimony was made in view of the statute authorizing the court to modify the same.  The mere fact that the court incorporated in the decree the stipulation concerning alimony is immaterial.  It is entirely possible that, while the court undoubtedly considered the stipulation of the parties fair and equitable at the time the decree was rendered, it might, upon a showing of subsequent changed conditions, deem it unjust.  To hold otherwise would defeat the very purpose and spirit of the statute.

Prime
, at 554-55 (quoting 
Warrington v. Warrington
, 83 P.2d 479 (Or. 1938)).

II

[¶42] Sheila also argues that, even if nonmodifiable spousal support agreements are enforceable, the particular spousal support agreement at issue in this case does not prevent a trial court from modifying the spousal support award under N.D.C.C. § 14-

05-24.  

[¶43] The agreement in this case provided for spousal support of $5,000 per month commencing May 1, 1999, and continuing until the death of either party, Sheila’s remarriage, or until the payment due on April 1, 2002, has been made.  The agreement also stated the court was divested of jurisdiction to modify spousal support in any manner.

[¶44] The parties to this agreement were married for 28 years.  They had three children, one of whom was a minor at the time of the divorce.  Conrad was 53 years old at the time of the divorce and employed as a urologist making $14,000 per month in take home pay.  Sheila was 51 years old and is employed as clerk at a bookstore making $1,000 per month.  The property division did not reveal any valuations of the assets of the parties.  On these facts, the trial court found the agreement to be “fair, just, and equitable.”

[¶45] Although we favor prompt and peaceful settlements of divorces, we must not sacrifice our responsibility to ensure they are fair and equitable.  
See
 N.D.C.C. § 14-

05-24.  With regard to spousal support, our statute states the court “may compel either of the parties . . . to make such suitable allowances to the other party for support . . . as to the court may seem just, having regard to the circumstances of the parties respectively.”  
Id.
  A husband and wife have a mutual duty to support each other out of their property and labor.  N.D.C.C. § 14-07-03.  “Our modern view of marriage is that it is a partnership with each making valuable contributions to the enterprise.” 
Wiege v. Wiege
, 518 N.W.2d, 708, 714 (N.D. 1994) (Levine, J., concurring).

[¶46] Justice Levine, in her concurrence in 
Wiege
, with regard to spousal support  said:

[R]ehabilitative support is varied in purpose.  It may be used as a means to restore an economically disadvantaged spouse to independent economic status.  It also may be used to equalize the burden of the divorce by increasing the earning capacity of the disadvantaged spouse.

. . . A remedy for . . . permanent disparity in earning capacity and the inequitable burdens the disparity breeds is permanent support.

Permanent support is a means of compensating a spouse for the permanent economic disability caused by the husband/wife decision for the one to forgo career opportunities and advancement as the other enhances earning capacity.

Wiege
, 518 N.W.2d at 712 (Levine, J., concurring) (citations omitted).  Our statutes and case law certainly set the stage for permanent spousal support under the facts of this case, which include a long-term marriage, foregone career opportunities, and a huge disparity in earning capacity and standard of living.

[¶47] The majority argues a person can waive their statutory right to seek modification of spousal support.  However, “[f]or a waiver to be effective, it must be a voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim or privilege which, except for such waiver, the party would have enjoyed.”  
Steckler v. Steckler
, 492 N.W.2d 76, 79 (N.D. 1992); 
accord
 
Breene v. Plaza Tower Ass’n
, 310 N.W.2d 730, 734 (N.D. 1981).  The agreement in this case merely stated “[t]he court shall be divested of jurisdiction to modify in any manner whatsoever the amount and term of the spousal support.”  Nowhere in this agreement does Sheila acknowledge she has a statutory right to seek modification of spousal support.  Nowhere in this agreement does Sheila acknowledge she is voluntarily and intentionally waiving that right.  Furthermore, Sheila was not represented by counsel according to the agreement.  Under these circumstances, I am of the opinion Sheila did not effectively waive her right to seek modification of spousal support.

[¶48] Citing 
Ashworth
, 526 S.E.2d at 571, 
Varn v. Varn
, 248 S.E.2d 667, 668 (Ga. 1978), and 
Simmons v. Simmons
, 396 N.E.2d 631, 633-34 (Ill. Ct. App. 1979), the majority argues stipulations similar to the one entered into by Sheila have been enforced in other jurisdictions.  These cases are, however, distinguishable from the case at hand.  

[¶49] The stipulation at issue in 
Ashworth
 provided that the parties: 

expressly waive any right which she or he may have to modify or revise this Agreement or to modify or revise any Judgment in any action providing for permanent alimony or to petition to modify or rescind any decree or judgment of which this Agreement is made a part.  Except as specifically provided herein, no modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both of the parties.

Ashworth
, 526 S.E.2d at 571.  The court held the stipulation was valid because it complied with the rule that: 

Parties to an alimony agreement may obtain modification unless the agreement expressly waives the right of modification by referring specifically to that right; the right to modification will be waived by agreement of the parties only in very clear waiver language which refers to the right of modification.

Id.
 at 572 (quoting 
Varn
, 248 S.E.2d at 669).

[¶50] In contrast to the stipulation at issue in 
Ashworth
, is the stipulation at issue in 
Brenizer v. Brenizer
, 360 S.E.2d 250, 251 (Ga. 1987).  The stipulation in 
Brenizer
 provided “‘[t]he provisions of this agreement shall not be modified or changed except by mutual consent and agreement of the parties, expressed in writing.’”  
Id.
  The Supreme Court of Georgia held that this language was insufficient to waive the parties right to seek modification of alimony because “the waiver language in the agreement does not refer to the right of modification of alimony, or to any waiver of that right.”  
Id.
  It follows, that because the agreement in this case “does not refer to the right of modification of alimony, or to any waiver of that right,” it, too, would be invalid under Georgia law.  
See
 
id.

[¶51] The majority cites 
Kilpatrick
, 392 So.2d 985 as authority for its opinion.  The Florida Court of Appeals held the stipulation in 
Kilpatrick
 was effective where it “specifically provided that the agreement was to be non-modifiable 
and that the wife waived or released any right to alimony modification.
”  
Id.
 at 986 (emphasis added).  In contrast, in 
Bassett v. Basset
t, 464 So.2d 1203, 1208 (Fla. Dist. Ct. App. 1984), the Florida Court of Appeals held that the parties did not clearly waive their right to seek modification of spousal support where the parties stipulated, among other things, “With the exception of the terms, conditions, covenants, agreements and stipulations, as hereinabove set out, the Plaintiff is hereby denied any rights of alimony” and “No modification, recission or amendment to this agreement shall be effective unless in writing, signed by the parties.”  
Id.
 at 1206 n.3 (inside quotation marks omitted).  The court held such an agreement did not meet the requirement “that an effective waiver of the right to modification may be deemed to arise only when it is stated either in express terms or through an interpretation of the agreement as a whole which can fairly lead to no other conclusion.”  
Id.
 at 1205.

[¶52] Michigan law is similar to Georgia and Florida law on nonmodifiable spousal support agreements.  
See
 
Staple
, 616 N.W.2d at 229 n.17 (agreeing with the Georgia test).  Under Michigan law, “to be enforceable, agreements to waive the statutory right to petition the court for modification of alimony must clearly and unambiguously set forth that the parties (1) forgo their statutory right to petition the court for modification and (2) agree that the alimony provision is final, binding, and nonmodifiable.”  
Id.
 at 229.  Just as the agreement in this case would likely be unenforceable under Georgia and Florida law, it would likely be unenforceable under Michigan law, because it does not expressly mention the parties’ statutory right to seek modification.  
Id.
 

[¶53] The final case the majority relies on to conclude the stipulation in this case effectively divested the trial court of jurisdiction to modify spousal support is 
Simmons
, 396 N.E.2d at 633-34.  However, the decision in 
Simmons
 turned on a statute which specifically allowed parties to limit a court’s power to modify spousal support.  
Id.
 at 633.  As has already been discussed, North Dakota does not have such a statute.

[¶54] The statute at issue in 
Simmons
 mirrored Section 306 of the Uniform Marriage and Divorce Act.  
Simmons
, at 633.  Section 306(f) provides “[e]xcept for terms concerning the support, custody, or visitation of children, the decree may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides.”  Uniform Marriage and Divorce Act § 306(f), 9A U.L.A. at 249.  However, section 306(b) of the Act provides the court must only incorporate the terms of the separation agreement if it finds the agreement is not unconscionable.  
Id.
  The Comment states:

In the context of negotiations between spouses as to the financial incidents of their marriage, the standard includes protection against overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.

In order to determine whether the agreement is unconscionable, the court may look to the economic circumstances of the parties resulting from the agreement, and any other relevant evidence such as the conditions under which the agreement was made, including the knowledge of the other party.

Uniform Marriage and Divorce Act § 306, Comment, 9A U.L.A. at 250.

[¶55] Unfortunately, the trial court’s mere recitation that the agreement is “a fair, just and equitable settlement” is a far cry from the Uniform Marriage and Divorce Act’s requirement that the trial court make a finding whether the agreement is unconscionable, a standard which “includes protection against overreaching, concealment of assets, and sharp dealing” and inquiry into “the conditions under which the agreement was made, including the knowledge of the other party.”  
Id.
  The risk of overreaching in divorce stipulations where one party is unrepresented is significant, and without a requirement that the trial court actively engage in determining the conditions under which the agreement was entered, the risk increases tremendously.  The decision reached by the majority today provides no protection whatsoever against these risks.

[¶56] I am also concerned that there is nothing in the record of this case to indicate the trial court took an active role in determining the stipulation was fair and equitable.  The Minnesota Supreme Court has stated the trial court “stands in place and on behalf of the citizens of the state as a third party to dissolution actions. . . . to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all.”  
Karon
, 435 N.W.2d at 503.

[¶57] I, therefore, respectfully dissent and would reverse and remand.

[¶58] Mary Muehlen Maring

FOOTNOTES
1:    
Section 14-05-24, N.D.C.C., was amended by the Legislature in 2001.  
See
 2001 N.D. Sess. Laws ch. 150, § 1.  Spousal support is now addressed in N.D.C.C. § 14-

05-24.1, which similarly provides:

Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time.  The court may modify its spousal support orders.

See
 2001 N.D. Sess. Laws ch. 149, § 10.