**LUCILLE B. COOPER**, Plaintiff–Appellant, v. **MARY COOPER SMITH**, Trustee of the Francis Cooper Trust, Defendant–Appellee, and **FRANCIS J. COOPER, JR.**, Intervenor, Defendant–Appellee

NO. 12875

(CIV. NO. 86–3275)

JUNE 9, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Lucille B. Cooper brought suit in the Circuit Court of the First Circuit to compel Mary Cooper Smith, Trustee of the Francis J. Cooper Trust, to convey a portion of the trust assets to her in fulfillment of a provision in the property settlement agreement between herself and Francis J. Cooper, Jr. that was approved by the Family Court of the First Circuit and incorporated in the Decree of Absolute Divorce awarded to him. Mary Cooper Smith and Francis J. Cooper, Jr., who had been given leave to intervene as a defendant, moved for summary judgment. Concluding that the provision "constitutes an unenforceable penalty and is therefore void[,]" the circuit court granted the motion. Reviewing the record, we conclude the circuit court erred in voiding the provision.

I.

A.

Lucille Baldwin and Francis J. Cooper, Jr. were married in 1944 and divorced in 1975. The Decree of Absolute Divorce entered by the family court did not divide and distribute the marital assets; it reserved "[for later disposition by the court] issues relating to the disposition of real and personal property, . . . allocation and discharge of debts, . . . alimony and attorneys' fees[.]" Nearly three years later, the parties executed a fourteen-page Property Settlement Agreement and presented it to the court for approval. The court reviewed and approved the document and supplemented the divorce decree by incorporating therein, by reference, the terms of the agreement.

The agreement divided and distributed the real property owned by the parties and their personal property other than the stock in Cooper Enterprises, Inc. It also provided for the payment of marital debts and the payment of permanent alimony to Mrs. Cooper. The Cooper Enterprises stock was treated separately and specially. The preamble to the three-and-a-half page portion of the agreement covering the stock read:

> It is recognized by the parties that Francis is a stockholder of Cooper Enterprises, Inc., a family landholding corporation. Francis represents that he presently owns 3,836 shares, that 3,686 shares are owned by his sister Mary Cooper Smith and

that the total outstanding shares are 7,522. It is further recognized that these stock holdings were, prior hereto, placed in two revocable trusts, the main purpose of which was to provide security for Francis, Mary Cooper Smith and their then respective spouses and children.

The revocable trusts referred to above were the Francis J. Cooper Trust and the Mary Cooper Smith Trust. The settlement agreement recited that "[t]he parties desire to maintain and preserve these trusts and yet provide equitably for the interests of Lucille." Mr. Cooper promised he would "retain his stock in Cooper Enterprises, Inc. in the Francis Cooper Trust but [would] amend his trust to provide: (1) that upon his death, Lucille [would] receive for her lifetime twenty–five percent (25%) of the annual trust net income . . . ."

Mr. Cooper "specifically agree[d further] that he [would] not make or attempt to make any amendments to the trust which in any way [would] affect the interests of Lucille or the children or make any withdrawals of corpus." And he stipulated that if he took any action in violation of the above, he could "be deemed to have withdrawn 35% of the . . . assets [of his trust] to his personal holdings and granted to Lucille . . . an immediate option to purchase such assets for the total price of One Hundred Dollars ($100); which option [would] be deemed to have been exercised."

The parties' accord on alimony was that "Francis [would] pay Lucille permanent alimony in the amount of $675.00 per month" and the sum would not be "subject to adjustment, modification or termination except as expressly provided [in the agreement]." The parties further declared "they [were] familiar with the provision of the Hawaii Revised Statutes relating to the modification and termination of alimony and expressly waive[d] any and all rights thereunder. In addition, [they] agreed that:

(1) If Lucille [applied] to any court to modify or amend the alimony payments required [by the pertinent provisions or as adjusted thereunder], her option rights described [earlier would] terminate.

(2) If Francis [applied] to any court to modify, amend, revoke or terminate said alimony payments or [should], for a period of four months, fail to pay in full the alimony required [t]hereunder, Lucille [would] immediately have the option to purchase thirty–five percent (35%) of the assets of the Francis

Cooper Trust for the sum of One Hundred Dollars ($100) which option [would] be deemed to have been exercised."

And the alimony payments were to

be increased only if the net annual income of Cooper Enterprises, Inc. equal[ed] or exceed[ed] the sum of $45,000. If the net annual income exceed[ed] the sum of $45,000, Francis [was to] pay Lucille as additional alimony, within four months of the end of the corporate calendar or fiscal year, an amount equal to five percent (5%) of the net corporate income in excess of $45,000.

The instrument creating the Francis J. Cooper Trust was amended thereafter to reflect, in pertinent part, the agreement that had been approved by the family court and incorporated in the divorce decree.

## B.

Mr. Cooper apparently abided by the provision covering the payment of monthly alimony in the sum of $675; but he failed to pay the additional alimony of five percent of Cooper Enterprises' corporate income in excess of $45,000 for 1982, 1983, and 1984, and the delinquency amounted to $937. Although there was a subsequent tender of the delinquent sum, Mrs. Cooper rejected the tender. She brought suit in the circuit court against Mrs. Smith in August of 1986, seeking an order compelling the conveyance of thirty–five percent of the assets of the Francis J. Cooper Trust to her. Her complaint reiterated the relevant provisions of the property settlement and averred alimony was owed her, Mr. Cooper failed to make the required payments, he was reminded by letter in October of 1985 and again in December of 1985 of the delinquency, she advised Mrs. Smith of her decision to exercise the option to purchase thirty–five percent of the trust assets for $100, and Mrs. Smith refused to comply with her request to transfer the assets.

Mrs. Smith moved to dismiss the complaint on sundry grounds, but the motion was denied. Mr. Cooper then moved to intervene as a defendant; his proposed responsive pleading contained, among other things, an averment that the suit was based on "unenforceable penalty or forfeiture provisions which are void as against public policy." And when he sought summary judgment later, he argued "the automatic forfeiture clause located in the Property Settlement Agreement . . . which LUCILLE

COOPER seeks to enforce in this suit is a penalty provision and is therefore unenforceable as a matter of law." The circuit court agreed with him, and granted the motion in which Mrs. Smith had joined.

Mrs. Cooper moved for reconsideration of the ruling; she argued Mr. Cooper actually was attempting to amend a judgment entered nine years earlier by the family court. But the argument fell on deaf ears. "A void judgment," the court declared, "is void no matter when."

## II.

A review of the record on appeal reveals the trial court, at the urging of the defendants, relied on principles of contract law in concluding the option given Mrs. Cooper "constitute[d] an unenforceable penalty . . . ." It is true, of course, that courts regard penalty and forfeiture provisions in contracts with disfavor. "If the court believes that, in the light of the circumstances existing when the contract was made, the amount [of damages] agreed upon is 'unconscionable' or is disproportionate to the value of the performance promised and the consideration paid, the sum fixed will be called a penalty and the agreement to pay it will not be enforced." 5 A. Corbin, *Contracts* § 1063, at 362 (1964) (footnote omitted). And "[t]o the extent that the non–occurrence of a condition [in a contract] would cause disproportionate forfeiture, a court may excuse the non–occurrence of that condition unless its occurrence was a material part of the agreed exchange." *Restatement (Second) of Contracts* § 229, at 185 (1981). But the case before the trial court was not determinable on tenets of contract law, for "[a] property settlement agreement incorporated into a decree of divorce loses its separate existence and becomes part of the decree." *Wallace v. Wallace*, 1 Haw. App. 315, 315, 619 P.2d 511, 511 (1980).

When the family court granted Mr. Cooper a Decree of Absolute Divorce in 1975, it also ordered:

That all unresolved issues including the issues relating to the disposition of real and personal property, the allocation and discharge of debts, Plaintiff's request for alimony and attorney's fees and the like be reserved for consideration and disposition at a further hearing; that the Court reserves jurisdiction in respect to these unresolved issues and will enter an order following such further hearing which shall supplement this decree.

An Order Supplementing Decree of Divorce and Approving Property Settlement Agreement was entered in 1978 when the parties returned to court to dispose of the unresolved issues; the order, in relevant part, read:

> The above-entitled matter came on for hearing on April 26, 1978 to resolve the matters reserved for further hearing under the Decree of Absolute Divorce entered herein on July 31, 1975, and the Court having considered the issues and evidence herein and having reviewed the Property Settlement Agreement executed by the parties;
>
> IT IS HEREBY ordered, adjudged and decreed that:
>
> 1. The Property Settlement Agreement entered into by and between the parties on April 25, 1978 is hereby approved by the Court and incorporated herein by reference.

That the family court could review and approve the property settlement agreement is not open to doubt; and "[w]here the parties to a divorce . . . have [their property settlement] incorporated into the decree of divorce, it has the same effect as a divorce decree and such settlement is not against the public policy of the laws of Hawaii." *Hollinrake v. Hollinrake*, 40 Haw. 397, 398 (1953). The trial court nevertheless decided not to enforce a provision of the divorce decree granted to Mr. Cooper; unlike the family court, it concluded the provision was void.

Granted, "[a] void judgment is void no matter when." But "[a] judgment is not void because it [may be] erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862, at 198–200 (1973) (footnotes omitted). Nothing in the record indicates the family court's decree was afflicted with any of these infirmities.[1] Thus, the circuit court erred in awarding the defendants judgment.

---

[1] Neither the trial court nor the parties raised a question about the possible application of Hawaii Revised Statutes (HRS) § 580–56(d) to the situation at hand. But we are mindful that HRS § 580–56(d) states that after "the elapse of one year after entry of a decree or order reserving the final division of property . . . , a divorced spouse shall not be entitled to dower or curtesy in the former spouse's real estate . . . , nor to any share of the former spouse's personal estate." The statute deprives the family court of power to divide the personal estate of the parties after the lapse of the given period over the objections of either party. *Boulton v.*

The court's error was in not viewing the defendants' challenge of the decree in its true light as "an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree." *Kapiolani Estate v. Atcherly*, 14 Haw. 651, 661 (1903) (quoting 17 Am. & Eng. Ency. Law, 2d ed. 848). An attempt of this nature, i.e., a collateral attack, "may not be made upon a judgment [or decree] rendered by a court of competent jurisdiction." *Gamino v. Greenwell*, 2 Haw. App. 59, 63, 625 P.2d 1055, 1059 (1981) (citing *Kapiolani Estate v. Atcherly, supra*). If the question is one of judicial error, as it was here, "and not of jurisdiction, it cannot be raised on collateral attack." *Gamino v. Greenwell*, 2 Haw. App. at 63–64, 625 P.2d at 1059 (citing *Kapiolani Estate v. Atcherly*, 14 Haw. at 664 (Frear, C.J., concurring)).

Since the record does not disclose that an appeal was taken from the decree or a motion was filed in the family court to vacate it, the decree was enforceable. And since the instrument creating the Francis J. Cooper Trust was amended to include the relevant option, Mrs. Cooper had "a right to have the trustee carry out the trust as provided in the trust instrument and in accordance with the rules of equity." G. Bogert, *Trusts* § 155, at 552 (1987).

The summary judgment entered by the circuit court is reversed, and the case is remanded for entry of an order compelling Mrs. Smith to convey thirty–five percent of the assets of the Francis J. Cooper Trust to Mrs. Cooper.

*Christine E. Kuriyama* (*Burnham H. Greeley* with her on the briefs: Greeley, Walker & Kowen, of counsel) for appellant.

*Ward D. Jones* (Chuck, Jones & MacLaren, of counsel) for intervenor, defendant–appellee.

*Dale A. Chan* (joined in brief of intervenor, defendant–appellee) for appellee.

---

*Boulton*, 69 Haw. 1, 730 P.2d 338 (1986). In this case, however, the division was effected by an agreement of the parties and submitted to the court for approval and incorporation into the decree. We do not believe the legislature intended that the court would be divested of authority to do this.