**MARY ANNE VORFELD**, Plaintiff–Appellant, v. **THEODORE WILLIAM VORFELD**, Defendant–Appellee

NO. 14441

(FC–D NO. 124564)

FEBRUARY 11, 1991

BURNS, C.J., HEEN, AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiff Mary Anne Vorfeld (Mary Anne) appeals the family court's March 5, 1990 Order Granting Motion for Modification of Spousal Support Provisions or Relief from Final Judgment Filed September 20, 1989 (March 5, 1990 Order) and its April 23, 1990 Findings of Fact and Conclusions of Law (April 23, 1990 FOF & COL). We vacate the March 5, 1990 Order and parts of the April 23, 1990 FOF & COL and remand for further proceedings.

## FACTS

Mary Anne was born on March 7, 1938. Defendant Theodore William Vorfeld (Theodore) was born on November 15, 1937. They were married on July 12, 1958. Jeffrey, their first child, was born on March 9, 1959. Janice, their second child, was born on April 9. 1964.

Mary Anne filed her Complaint for Divorce on March 25, 1982. She was then employed by a law firm as a Registered Nurse/Paralegal. Her gross monthly income was $1,300. As President of Thermal Engineering Corporation, Theodore's gross monthly income was $4,250. Janice, a senior at Punahou School, lived with Mary Anne.

On March 24, 1982 Mary Anne and Theodore entered into an Agreement Incident To And In Contemplation of Divorce (March 24, 1982 AICD). It stated, in relevant part, as follows:

### IV

A. No modification, rescission or amendment to this Agreement shall be effective unless in writing and signed by the parties hereto.

\* \* \*

### VI

**CUSTODY OF MINOR CHILD**: Wife shall be awarded the care, custody and control of [Janice][.]

\* \* \*

### VII ·

**CHILD SUPPORT**: Wife shall be responsible for the support, maintenance and education of [Janice] until such time as Wife remarries.

## VIII

**ALIMONY**: a. Commencing April 1, 1982 and continuing thereafter until July 1, 1986 or Wife's prior remarriage, Husband shall pay to Wife the sum of $1,692.31 every two weeks (twenty–six (26) payments) annually for a yearly total alimony of $44,000.00.

b. Commencing July 1, 1986, Husband will pay to Wife an adjusted annual alimony of $36,000.00 per year adjusted annually for inflation based on the Honolulu Consumer Price Index as of July 1, 1981 the same to continue until Husband retires or Wife remarries, whichever shall first occur. Payments shall be every two weeks.

c. Husband and Wife agree that their present annual salaries are $51,000.00 for Husband and $15,750.00 for Wife. From April 1, 1982 until July 1, 1986 raises and bonuses paid by their employers in addition to the aforesaid salaries will be shared 50/50 based upon gross amounts after FICA deductions. These monies shall be paid by January 3 of the year following that in which the same was received.

## IX

**MISCELLANEOUS PROPERTY**: Wife shall be given rights to fifty per cent (50%) of Husband's value in the Thermal Engineering Corporation (TEC) Profit Sharing Fund, fifty per cent (50%) of Husband's value in Amfac retirement funds and fifty per cent (50%) of Husband's value in TEC stock. A cash settlement of this value may be made at any time after July 1, 1986 at the option of Husband[.]

* * *

## X

**REAL PROPERTY**: Wife shall retain as her sole and separate property her residence located at 4309 Piikea Place, Honolulu, Hawaii, 96818. Wife agrees to be solely responsible for the mortgage and maintenance of the residence and shall save and hold Husband harmless from any liability thereon.

## XI

**INSURANCE**:

* * *

c. In the event Husband becomes disabled and unable to receive a salary, Wife shall receive one–half (1/2) of the disability payments unless she has remarried.

* * *

## XIII

**RETIREMENT OF HUSBAND**: Husband agrees that, barring infirmities, he will not retire until age 65 except by mutual agreement.

* * *

## XV

**INTENT OF AGREEMENT**: The parties agree that the intention of this agreement is to provide for the education of JANICE, the support of JANICE and Wife until JANICE graduates from college and thereafter for Wife's maintenance until Husband retires or Wife remarries. The provisions made herein for the support of Wife and the division of property are in recognition of Wife's contribution to the formation of TEC and Husband's contribution to Wife's education and it is the intent that each party shall mutually benefit from these endeavors.

The apparent reason for the difference in the spousal support payable commencing April 1, 1982 and commencing July 1, 1986 was Janice's entry into college in September 1982. Theodore testified as follows:

Q              * * *

And [Janice] went to Dartmouth, and all the expenses for Dartmouth — including living expenses — was [sic] paid for by [Mary Anne] under this agreement, this decree?

A  Substantially all. Not all.

As I've mentioned to Mr. Lockwood there were — was a modification that we talked about when Dartmouth became possible for her whereby we each contributed one hundred percent of our bonuses to that.

Q  You[r] agreement provides that your bonuses . . . either of you made will be shared with the other fifty percent each?

A  That's what the agreement says.

                * * *

Q  So, you paid over your entire bonus that you received for those years?

A  That's for — 1983 and 1984 is my recollection.

It was a two year period.

Transcript, January 10, 1990, at 36–37.

Theodore signed an Appearance and Waiver After Agreement on March 29, 1982. It was filed in the family court on March 31, 1982.

The family court's April 30, 1982 Minutes of Uncontested Matrimonial Action states that only Mary Anne and her attorney attended the hearing and that Mary Anne's March 25, 1982 Income and Expense Statement, her March 25, 1982 Asset and Debt Statement, and the March 24, 1982 AICD were the only exhibits in evidence at the hearing.

The May 6, 1982 Decree Granting Absolute Divorce and Awarding Child Custody (May 6, 1982 Divorce Decree), which is approved as to content by Theodore, states that the March 24, 1982 AICD "is hereby approved by the Court and incorporated herein by reference."

On May 22, 1987 Theodore paid Mary Anne $41,669.31 for her half of his TEC stock, TEC profit sharing and retirement account, and Amfac rollover retirement account.

On September 20, 1989 Theodore filed a Motion for Modification of Spousal Support Provisions or Relief from Final Judgment (September 20, 1989 Motion) citing Hawaii Family Court Rules (HFCR) Rules 54(f)[1] and 60(b)(6).[2] After a hearing on January 31, 1990, the family court entered its March 5, 1990 Order. It ordered Theodore to pay alimony until the sooner of December

---

[1] Hawaii Family Court Rules (HFCR) 54(f) provides:

**Periodic Payments.** Provisions for periodic payments of alimony and/or child support shall be set forth specifically in the decree or order entered in any case providing for the same to be paid, with specificity as to (i) whether such payments are to be made directly to the recipient or through the chief clerk of a circuit court; and (ii) the date or dates within each month and year on which such payments are to be made. Provisions for periodic payments of child support as set forth in written agreements between the parties may be approved but shall be made subject to further order of the court. Provisions for periodic payments of alimony for an indefinite period as set forth in written agreements between the parties may be approved but shall be made subject to further order of the court. Provisions for periodic payments of alimony for a definite period as set forth in written agreements between the parties may be approved but shall be for a definite period of time or until further order of the court, whichever occurs sooner.

[2] HFCR Rule 60(b)(6) provides:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from any or all of the provisions of a final decree, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the decree.

31, 1994, Mary Anne's remarriage, the death of either party, or the further order of the court, as follows:

| | |
|---|---|
| Through May 1990: | $4,408.00 per month |
| Commencing June 1, 1990: | $2,714.33 per month |
| Commencing January 1, 1993: | $1,666.66 per month |
| Commencing January 1, 1994: | $ 833.33 per month |

Thereafter, the family court entered its April 23, 1990 FOF & COL. They state, in relevant part, as follows:

## FINDINGS OF FACT

1. In entering into the [March 24, 1982 AICD, Theodore] anticipated that his income would continue to increase and exceed $100,000.00 per year in the future based upon the expansion of his business into the construction industry.

2. In anticipation of this increase in earnings, [Theodore] suggested that [Mary Anne's] alimony be increased annually pursuant to the increase in the Consumer Price Index and this provision became part of the AICD.

3. The anticipation of increased earnings did not occur because the new venture into the construction industry failed.

4. At the time of divorce, [Mary Anne's] alimony comprised 65.47% of [Theodore's] gross income. * * *

5. In 1989, [Theodore] paid $48,576 (or $4,048 per month) in alimony to [Mary Anne]. * * *

6. In 1989, [Mary Anne's] alimony comprised 72.77% of [Theodore's] gross income. * * *

7. [Mary Anne] has $86,000.00 invested in Prudential Bache. $55,000.00 of this amount was from her inheritance.

8. [Mary Anne] presently requires $3,486.00 per month on which to live.

\* \* \*

10. [Mary Anne] planned her future in anticipation of continued alimony.

11. [Theodore] presently requires $2,741 per month on which to live[.]

\* \* \*

12. [Theodore's] present spouse presently receives $35,000 per year in alimony which is set to terminate on October 31, 1992.

\* \* \*

14. In 1984, [Mary Anne] went into her own consulting business doing work for insurance companies in workers compensation claims.

15. In 1986, she had revenues of $37,810 with net income of $9,661. In 1987, she had revenues of $27,661 with net income of $6,663.

16. In 1988, she had revenues of $19,992 with net income of $5,237.

17. The reason for this decrease in income has been [Mary Anne's] choice to "take it easy, work less and enjoy life more . . . ."

\* \* \*

19. [Theodore's] income in 1989 was $66,750.

## CONCLUSIONS OF LAW

1. There has been a material change in circumstances since the divorce. This material change is the fact that:

a. [Theodore's] earnings did not increase as anticipated since the divorce causing his alimony obligation comprised an ever increasing percentage of his income.

＊ ＊ ＊

b. [Mary Anne] inherited $55,000 since the date of the divorce and has $86,000 in investments.

2. It is reasonable to impute a conservative income of 5% per annum on [Mary Anne's] Prudential Bache account . . . .

3. Pursuant to *Saromines v. Saromines*, 3 Haw. App. 20 (1982), it is reasonable to attribute income to [Mary Anne] of $5.00 per hour for 40 hours a week.

＊ ＊ ＊

4. [Mary Anne's] present need for alimony is, therefore, $2,262.00 per month or $27,144.00 per year.

5. Adding 20% to take into account the tax effect of alimony, [Mary Anne's] present gross need for alimony is $32,572 per year or $2,714 per month, which is 47.6% of [Theodore's] gross income.

6. [Theodore's] present needs can be met from current sources of household income including his present spouse's alimony.

Based upon the foregoing facts and conclusions, it is just and equitable to award [Mary Anne] transitional alimony to be reduced over time . . . .

## DISCUSSION
### I.

We agree with Mary Anne that FOF 4 is clearly erroneous and, consequently, COL 1.a. is wrong in part. Theodore's 1982 income was $51,000.00. At that time, his alimony obligation, which included his child support obligation, was $44,000.00 per year or 86.27%, not 65.47%, of his income.

We also agree with Mary Anne that FOF 17 is clearly erroneous in part. Mary Anne testified in relevant part as follows:

Q [Mary Anne], there's been a substantial drop in your income over the past three years has there not?

A   Yes.

Q   And is that because you've decided that since — after your daughter completed college you wanted to work less and enjoy life a little bit more, is that correct?

* * *

A   Yes.

Transcript, January 10, 1990, at 56.

II.

Mary Anne contends that the family court did not have the power to modify the May 6, 1982 Divorce Decree without her consent; and if it had the power, it exercised it erroneously.

A.

May the family court modify a divorce decree that approved and incorporated a divorcing couple's agreement wherein (1) the husband agreed (a) not to retire until age 65 and (b) to pay the wife specified spousal support until he retires or the wife remarries and (2) both parties agreed that their agreement could not be amended absent the consent of both parties?  Our answer is yes.

The May 6, 1982 Divorce Decree ordered spousal support payable periodically for an indefinite period of time.  We have previously concluded that a spousal support order is always subject to the further order of the family court upon a material change in the relevant circumstances of either party even though the order does not explicitly so state. *Beach v. Beach*, 6 Haw. App. 66, 708 P.2d 143 (1985).  We now conclude that the family court's spousal support order is always subject to the further order of the family court upon a material change in the relevant circumstances of either party even when the order explicitly states otherwise.  The court entering the spousal support order cannot nullify a court's power under Hawaii Revised Statutes §§ 580–47 and 572–22 to subsequently amend the order in appropriate circumstances.

The family court may have abused its discretion when it entered its May 6, 1982 Divorce Decree ordering Theodore to pay $44,000.00 or 86.27% of his $51,000.00 annual gross income for spousal support. Assuming the family court erred, the time within which to correct the error by reconsideration or an appeal has expired. *Cooper v. Smith*, 70 Haw. 449, 776 P.2d 1178 (1989). The only way the error may be corrected is pursuant to HFCR Rule 60. Apparently, recognizing the inapplicability of the other parts of HFCR Rule 60, Theodore sought to correct the error under HFCR Rule 60(b)(6). Since "[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made," 11 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 2864 (1973), it appears that the error may not be corrected under HFCR 60(b)(6). In any event, however, the May 6, 1982 error may not be the basis for the March 5, 1990 modification.

### B.

A motion for the modification of court–ordered spousal support presents the family court with the following three questions. *Compare Davis v. Davis*, 3 Haw. App. 501, 653 P.2d 1167 (1982) (relating to motions for modification of court–ordered child support).

1. Have any of the relevant circumstances materially changed?

A material change in the relevant circumstances has occurred when a party's relevant circumstances that are proven to exist at the time of the modification hearing are materially different from the party's relevant circumstances that were proven to exist when the family court entered its spousal support order.

As outlined in *Cassiday v. Cassiday*, 6 Haw. App. 207, 215–16, 716 P.2d 1145, 1151 (1985), *aff'd in part, rev'd in part*, 68 Haw. 383, 716 P.2d 1133 (1986), the relevant circumstances are as follows. The first relevant circumstance is the payee's need.

What amount of money does he or she need to maintain the standard of living established during the marriage? The second relevant circumstance is the payee's ability to meet his or her need without spousal support. Taking into account the payee's income, or what it should be, including the net income producing capability of his or her property, what is his or her reasonable ability to meet his or her need without spousal support? The third relevant circumstance is the payor's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The fourth relevant circumstance is the payor's ability to pay spousal support. Taking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support?

    2.  If the answer to question 1 is yes, should there be a modification?

    3.  If the answer to question 2 is yes, what should the modification be?

When answering any of the above questions, the following two rules apply: Any part of the payor's current inability to pay that was unreasonably caused by the payor may not be considered and must be ignored. Any part of the payee's current need that was caused by the payee's violation of his or her duty to exert reasonable efforts to attain self–sufficiency at the standard of living established during the marriage may not be considered and must be ignored. *Saromines v. Saromines*, 3 Haw. App. 20, 641 P.2d 1342 (1982).

1.

In this case, the answer to question 1 is yes, but not for the reason stated by the family court in COL 1.a.

With respect to Theodore's ability to pay, the answer to question 1 is no. Since we are dealing with a court order and not an agreement in contemplation of divorce, *Cooper v. Smith*, *supra*,

circumstances that were relevant to either or both of the parties when the family court entered its spousal support order are not relevant circumstances. Only the relevant circumstances that were on the record when the family court entered its spousal support order are relevant circumstances. The spousal support provisions in the May 6, 1982 Divorce Decree were not conditioned upon or entered in consideration of Theodore's predictions of his future earnings or his subsequent spouse's income because those predictions were not on the record when the family court entered the May 6, 1982 Divorce Decree. Consequently, Theodore's nonrealization of his anticipated periodic increases in future earnings and the decrease in his subsequent spouse's income were not changes of relevant circumstances.

The record indicates that Theodore was no less able to pay spousal support in 1989 than he was able to pay spousal support in prior years. The relevant numbers are as follows:

| Year | Theodore's Income | Spousal Support | Percentage |
|------|------------------|-----------------|------------|
| 1982 | $51,000 | $44,000 | .8627 |
| 1986 | $59,219 | $44,819 | .7568 |
| 1987 | $59,849 | $43,233 | .7223 |
| 1988 | $68,346 | $47,150 | .6898 |
| 1989 | $66,750 | $48,576 | .7277 |

With respect to Mary Anne's need, however, the answer to question 1 is yes. FOF 8 validly finds that "[Mary Anne] presently [in 1990] requires $3,486.00 per month [$41,832 per year] on which to live." That amount is less than the $36,000.00 per year, plus an annual adjustment for inflation ($48,576 total in 1989), that the May 6, 1982 Divorce Decree determined Mary Anne's need to be and ordered Theodore to pay.

2.

The family court answered question 2 in the affirmative. In light of FOF 8, its decision was not an error.

### 3.

The family court answered question 3 by ordering the periodic reduction and December 31, 1994 termination of Theodore's obligation to pay, and Mary Anne's right to receive, spousal support. The family court's findings, however, do not support its reduction of spousal support below her need for spousal support of $2,262.00 per month as stated in COL 4.

COL 3 is evidence of the family court's implicit finding that a part of Mary Anne's continuing need was caused by her violation of her duty to exert reasonable efforts to attain self–sufficiency at the standard of living established during the marriage. In our view, that implicit ultimate finding is not supported by adequate preliminary findings. Both "less" and "more" are relative terms. Without the relevant factual basis, their presence in FOF 17 is meaningless. Even assuming the validity of the family court's implicit ultimate finding, Mary Anne has a valid need for $2,714.00 per month spousal support and, on January 31, 1990, Theodore had no less ability to pay spousal support than he had in May 1982 and July 1986 when he was ordered to pay more spousal support than $2,714.00 per month.

## CONCLUSION

Accordingly, we vacate the March 5, 1990 Order Granting Motion for Modification of Spousal Support Provisions or Relief from Final Judgment Filed September 20, 1989. We also vacate Findings of Fact 1, 2, 3, 4, 10, 12, and 17 and Conclusions of Law 1.a., 6.a., 6.b., 6.c., 6.d., and 6.e. of the April 23, 1990 Findings of Fact and Conclusions of Law. We remand for further proceedings with respect to the matters covered by the vacated orders.

*Anthony B. Craven, Cheryl A. Nakamura,* and *Joan K. Suzuki* on the briefs for plaintiff–appellant.

*Susan Barr* on the brief for defendant–appellee.