57 P.3d 494

Eugenia Vincent LOWTHER,
Plaintiff–Appellee,

v.

Timothy Edward LOWTHER,
Defendant–Appellant.

Nos. 24007, 24323, 24494.

Intermediate Court of Appeals of Hawai'i.

Oct. 4, 2002.

Dennis W. Jung, Honolulu, on the briefs, for Defendant–Appellant.

Barbara Lee Melvin, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

In this divorce case between Defendant Appellant Timothy Edward Lowther (Timothy) and Plaintiff Appellee Eugenia Vincent Lowther (Eugenia), Timothy filed the following three appeals which were consolidated on August 9, 2002:

No. 24007 is an appeal from (1) the December 6, 2000 order denying Timothy's December 1, 1999 Hawai'i Family Court Rule (HFCR) Rule 60(b)(6) motion "for an order setting aside and/or modifying" the November 2, 1998 Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree) and (2) the January 5, 2001 order stating that "[Timothy's] Motion for Reconsideration and Request for Hearing filed on December 15, 2000, is summarily denied without hearing pursuant to Rule 59(j) Hawai'i Family Court Rules[.]" Subject to one exception, we affirm these orders.

No. 24323 is an appeal from the March 13, 2001 stipulated order amending the Divorce Decree. We conclude that this order is void.

No. 24494 is an appeal from the July 17, 2001 order "that [Timothy and counsel for Timothy] forthwith sign a stipulation to dismiss the [Hawai'i] Supreme Court appeal [no. 24004] filed January 4, 2001. [Eugenia] is awarded attorney's fees and costs." We conclude that this order is void.

## RELEVANT BACKGROUND STATED CHRONOLOGICALLY

On August 20, 1978, Timothy and Eugenia were married. At that time, Timothy had been a Honolulu Fire Department (HFD) fireman for almost seven years.[1] On October 3, 1981, their son was born, and on November 10, 1986, their daughter was born. On December 31, 1997, Timothy retired as a HFD fireman. On February 26, 1998, Eugenia filed a complaint for divorce. At the time, Eugenia was a kindergarten teacher for the State of Hawai'i.

After a hearing on March 25, 1998, District Family Judge Kenneth E. Enright entered an order requiring Timothy to pay monthly, commencing April 1, 1998, $1,500 of the parties' approximately $2,400 monthly mortgage debt.

On September 29, 1998, the scheduled contested divorce hearing was held. District Family Judge R. Mark Browning presided. Although Timothy failed to appear and the court entered default against him, Timothy's attorney, Bruce Masunaga, was there and participated.

At the commencement of the hearing, attorney Masunaga stated, in relevant part, as follows:

One of the problems in this case has been that [Timothy] was in transient locations and I was not able to keep in contact with him. Also, and I will state this for the record, Judge, I had gone into a rehabilitation facility for thirty days myself for alcohol and substance abuse. That thirty days ended in the second week of September. [Timothy] in the meantime had moved residences. He had left a number [at] which I was able to contact him. My mother-in-law although had taken the message and the number, and she had since misplaced the number. So I was not able to keep in touch with him.

I don't know where he's residing now. I do know it's in the Manoa area, but I don't know where exactly. Over the weekend I did try to go to somehow locate him in the Manoa area and was unsuccessful although I believe he does know about today's hearing.

Eugenia's August 19, 1998 Income and Expense Statement, in evidence, states that her gross income was then $2,814.42 per month.

Eugenia's August 19, 1998 Asset and Debt Statement, in evidence, states, in relevant part, that the value of Timothy's Aetna Deferred Compensation as of December 31, 1997, was then $10,132.96, and the parties acquired the Colorado real estate on February 24, 1998, at a cost of $8,100 but the then present value was unknown.

Timothy's March 23, 1998 Income and Expense Statement, in evidence, stated that his gross income (entirely from HFD retirement) was then $2,450 per month.

Timothy's March 23, 1998 Asset and Debt Statement, in evidence, states that the value of his tools was then $1,000 and did not mention his ownership of, or the values of, the Aetna Deferred Compensation or the Colorado real estate.

At the hearing, evidence was presented that Timothy retired on December 31, 1997. The total amount of his retirement fund was $141,000. He received $34,105.76 on February 15, 1998. His remaining balance was about $107,219.53. He did not opt for any survivor benefits and was being paid $2,451.52 per month.

Eugenia testified that her father loaned the parties $90,000 to help them buy the marital residence and, when her "father passed away about ... three months ago[,]"

---

1. Defendant Appellant Timothy Edward Lowther (Timothy) started his employment with the Honolulu Fire Department on October 1, 1971.

her $51,786 inheritance was applied in partial payment of the promissory note signed by her and Timothy.

At the conclusion of the hearing, Judge Browning orally granted the divorce, awarded custody of the children to Eugenia, ordered child support to be paid pursuant to the guidelines, ordered the tools and guns to be sold and half of the proceeds to go to Eugenia, ordered the guardian ad litem to be paid $875 from the deferred compensation fund, ordered the parties to sign a deed of the marital residence in lieu of foreclosure,[2] and stated, "With respect to all other issues I'm going to ask [counsel for Eugenia] to provide me with a decree within ten days. [Counsel for Timothy], you can provide the court with your decree as well as to the other issues."

On October 29, 1998, counsel for Eugenia presented Judge Browning with a letter stating as follows:

Enclosed is a duplicate original of the proposed Decree in the above case, which was forwarded to opposing counsel, Bruce A. Masunaga, via his Court jacket and by regular mail on October 21, 1998, pursuant to Rule 58, Hawai'i Family Court Rules. Attached are copies of the envelope that was returned to my office unopened on October 26, 1998, and the Certificate of Mailing. To date I have received no alternate proposed decree, no proposed changes in the language contained in my proposed decree, and no objections to my decree. Therefore, I am requesting that you approve my proposed decree.

On November 2, 1998, Judge Browning entered the Divorce Decree: (a) ordering Timothy to pay child support of $215 per child per month and to maintain his existing life insurance policy naming the children as irrevocable beneficiaries; (b) ordering Eugenia to cover the children on her medical and dental plan; (c) ordering payment of $825

from Timothy's Aetna Deferred Compensation Plan to the Guardian Ad Litem; (d) noting that "[t]he joint real property located at ... Kailua ... is currently in foreclosure proceedings," ordering that "[t]he Chief Clerk of the First Circuit, State of Hawai'i shall sign in place of [Timothy] a deed in lieu of foreclosure upon presentation"; (e) awarding Eugenia the balance of Timothy's Aetna Deferred Compensation Plan, the Colorado real property, the 1987 Dodge, 75% of Timothy's retirement pay, and all of her State of Hawai'i retirement;[3] (f) awarding Timothy the 1983 Dodge, the 1986 Mazda, and the 1984 Dodge; (g) awarding each party one-half of the proceeds from the sale of the tools and guns; and (h) ordering each party to pay one-half of the $430 debt to Sears, the $175 debt to the dentist, the $1,300+ debt owing to the City and County of Honolulu, and the uninsured medical and dental expenses of the children.

On October 27, 1999, Eugenia filed a motion to enforce the Divorce Decree. On November 19, 1999, per diem District Family Judge Christine E. Kuriyama continued the hearing of this motion for the purpose of allowing Timothy time to file a motion to set aside the Divorce Decree and entered an order requiring Timothy to pay Eugenia from his retirement receipts the sum of $500 on the first day of each month and on the fifteenth day of each month, a total of $1,000 per month, commencing December 1, 1999.

On December 1, 1999, Timothy filed a motion, pursuant to HFCR Rule 60(b)(6), for an order setting aside and/or modifying the property division part of the Divorce Decree. It stated that "[t]he basis of this Motion is that [Timothy] lacked proper representation at trial and/or after trial, that [Timothy] did not receive from his attorney in a timely manner a copy of the Decree and that the inequities and lack of a basis in the law for the existing property division justify relief

2. Plaintiff Appellee Eugenia Vincent Lowther (Eugenia) testified that the mortgagee was willing to accept a deed in lieu of foreclosure and she wanted to sign one but Timothy would not cooperate. When asked who would sign for Timothy, the court answered, "The circuit court clerk." When asked if that could be done "as an

expedited order today[,]" the court answered, "You may do so."

3. No explanation was provided why the family court awarded Eugenia "75% of Timothy's retirement pay, and all of her State of Hawai'i retirement[.]"

from the Decree...." In an accompanying affidavit, Timothy's counsel stated:

6. [Timothy] was not present at the Divorce hearing held on September 29, 1999. [Timothy] has informed me that Mr. Masunaga informed him that the hearing had been moved to the following week and [Timothy] appeared that following week. Upon appearing at court and discovering that the trial was held the week before, [Timothy] tried to contact Mr. Masunaga and was unable to do so and has had no further contact with him since.

7. In an October 28, 1998 letter, filed on October 29, 1998, [Eugenia's] counsel Barbara Melvin informed the court that the letter she sent to Mr. Masunaga containing the filed copy of the Decree was returned unopened to her office on October 26, 1998. There is no showing that Mr. Masunaga ever received a filed copy of the Decree.

8. [Timothy] has informed me that Mr. Masunaga never provided a copy of the Decree to him. [Timothy] did not review a copy of the decree until after [Eugenia's] Motion for Post Decree relief was recently served upon him. Mr. Masunaga's inattention to the case is also evidenced by his failure to sign the Decree.

Eugenia's October 27, 1999 motion and Timothy's December 1, 1999 motion were heard on January 10, 2000, and February 18, 2000. At the conclusion of the hearing, District Family Judge Linda K.C. Luke orally decided the issues. On December 6, 2000, Judge Luke entered an order noting that Timothy had failed to comply with the Divorce Decree, mandating him to sign a voluntary assignment of his Aetna Deferred Compensation Plan and 75% of his retirement pay to Eugenia, and further stating, in relevant part, as follows:

Based on the hearings and transcripts and other records in this case, it is hereby ordered as follows:

1. [Timothy's] motion to set aside [Timothy's] default of the September 29, 1998 hearing is denied. [Timothy] had adequate notice and was properly represented at this hearing. He failed to appear at said hearing without good cause. Further, [Timothy] had notice within one week that he had missed the Court date and brought no motion to set aside the default for more than a year. He had notice of the terms of the Court's decision based on the September 29, 1998, hearing from both [Eugenia's] counsel and the City and County retirement system and failed to bring any motions to set aside the terms of the divorce for more than a year after the granting of the divorce.

2. [Timothy] is found to be in contempt of the Decree Granting Absolute Divorce and Awarding Child Custody filed September 29, 1998, as follows:

a) He did not pay 75% of his retirement benefits to [Eugenia] as ordered in ... said decree.

b) [Timothy] did not pay [Eugenia] the balance of his Aetna Deferred Compensation Plan as ordered in ... said decree.

c) [Timothy] did not pay his one-half of the $430.00 debt to Sears, the $175.00 debt to the dentist, and the $1,300.00 debt to the City and County of Honolulu as ordered by ... said decree and judgment for $1,905.00 hereby enters.[4]

d) [Timothy] did not pay his one-half share of the parties' post-divorce medical and dental expenses as ordered by ... said decree and judgment for $150.00 hereby enters.

4.[5] [Timothy] is hereby ordered to sign a voluntarily [sic] assignment authorizing the City and County of Honolulu and State of Hawai'i through its [sic] retirement system to deduct from [Timothy's] retired pay, pension and/or annuity from the City and County of Honolulu, Fire Department, an amount equal to 75% of said retired pay, pension and/or annuity and to transmit said amount directly to [Eugenia]. Said amount has been found to be [Euge-

---

4. The family court did not explain how or why Timothy's failure to pay one-half of $1,905 authorized entry of a judgment against him in the amount of $1,905.

5. This document does not have a paragraph 3.

nia's] share of marital property and thus constitutes [Eugenia's] property. Should [Timothy] fail to cooperate in signing said authorization, he is on notice that he may be held in criminal contempt by this Court, the penalties for which include incarceration until such time as the contempt ceases and [Timothy] complies with this Court's orders. Should [Timothy] fail to sign said assignment upon presentation, the Chief Clerk of the First Circuit, State of Hawai'i shall be authorized to sign on his behalf and the retirement system shall accept said signature as if it were Plaintiff's [sic].

5. [Timothy] is hereby ordered to sign a voluntarily [sic] assignment authorizing Aetna to release to [Eugenia] forthwith the balance of [Timothy's] Aetna Deferred Compensation Plan. Said amount has been found to be [Eugenia's] share of marital property and thus constitutes [Eugenia's] property. [Timothy] is to take no steps to further reduce said plan pending its release to [Eugenia]. Should [Timothy] fail to cooperate in signing said authorization, he is on notice that he may be held in criminal contempt by this Court, the penalties for which include incarceration until such time as the contempt ceases and [Timothy] complies with this Court's orders. Should [Timothy] fail to sign said assignment upon presentation, the Chief Clerk of the First Circuit, State of Hawai'i shall be authorized to sign on his behalf and the retirement system shall accept said signature as if it were Plaintiff's [sic].

6. Judgment shall enter for [Eugenia] for the amount that [Timothy] has received from his Aetna Deferred Compensation Plan following the divorce on the grounds that said funds were awarded to [Eugenia] in the divorce. [Timothy] is ordered to provide all documentation concerning said plan to [Eugenia] through her attorney ... forthwith.

(Footnotes added.)

On December 18, 2000, Timothy filed a motion for reconsideration and/or further hearing.

On January 3, 2001, the Employees' Retirement System of the State of Hawai'i (ERS) moved, pursuant to HFCR Rule 60(b)(4) or (6), for relief from the Divorce Decree and the December 6, 2000 order. The ERS argued, in relevant part, as follows:

To the extent that the Divorce Decree in this case acts *directly* on the ERS and its funds by ordering *direct* payment to [Eugenia] and retaining jurisdiction over ERS for this purpose, it is void and unenforceable pursuant to [Hawai'i Revised Statutes (HRS)] § 88–91. To the extent that the Order originates from the Divorce Decree and orders [Timothy] to *assign* 75% of his pension to [Eugenia], it is also void and unenforceable pursuant to HRS § 88–91.

(Emphasis in original.) Hawai'i Revised Statutes (HRS) § 88–91 (1993) states, in relevant part, that "[t]he right of a person to a pension ... shall be unassignable except as in this part specifically provided."

On January 4, 2001, Timothy filed a notice of appeal of the December 6, 2000 order. This is appeal no. 24007.

On January 5, 2001, Judge Luke entered an order "that [Timothy's] Motion for Reconsideration and Request for Hearing filed on December 15, 2000, is summarily denied without hearing pursuant to Rule 59(j) Hawai'i Family Court Rules." On January 5, 2001, Timothy filed an amended notice of appeal of the December 6, 2000 order and the January 5, 2001 order. On January 10, 2001, Judge Luke ordered counsel for Eugenia to submit proposed findings and conclusions. On January 18, 2001, Timothy filed a Second Amended Notice of Appeal of the December 6, 2000 order and the January 5, 2001 order.

On January 24, 2001, per diem District Family Judge Gale L.F. Ching heard the ERS motion and a settlement was negotiated. On January 26, 2001, Judge Ching entered an order stating that the ERS motion was "withdrawn without prejudice by agreement of the parties."

On February 14, 2001, Judge Luke entered an order cancelling the January 10, 2001 order requiring counsel for Eugenia to submit proposed findings and conclusions.

On March 13, 2001, pursuant to the settlement, Judge Ching entered a stipulated or-

der amending the Divorce Decree. This order was approved as to form and content by Eugenia and Timothy, and approved as to form by the attorneys for both parties. It states, in relevant part, as follows:

2. [Eugenia] is awarded fifty percent (50%) of [Timothy's] retired pay or pension plan with the Employees' Retirement System. Said amount as amended shall be paid directly to [Eugenia] as received by [Timothy] starting February 2001 and continuing as long as both shall live, as alimony.... The parties acknowledge that this award of lifetime alimony to [Eugenia] is made in return for [Eugenia's] waiver of her Court ordered interest in [Timothy's] City and County retirement pension plan under the Employee's [sic] Retirement System.... The parties acknowledge that [Eugenia's] waiver of arrears in paragraph number 16 of this document and [Eugenia's] acceptance of a fifty percent (50%) rather than seventy five percent (75%) of [Timothy's] City and County of Honolulu pension and retirement was in return for [Timothy's] agreement to establish an order which would insure payment to [Eugenia] in a timely fashion of the lessor [sic] amounts agreed to by the parties.

3. [Eugenia's] award of 75% of [Timothy's] other retired pay, pension and/or annuity is stricken except as provided herein.

4. The parties' [daughter] shall remain as sole beneficiary of [Timothy's] retired pay or pension with rights of survivorship.[6]

5. For the purpose of the collection of the alimony...., [Timothy] agrees and the Court hereby finds that [Timothy] has been in contempt of Court for failure to make payments of spousal support and/or property settlement payments to [Eugenia] as ordered by the Court. [Timothy] with the advice of counsel hereby waives any procedural defects in the request for a

finding of contempt and agrees to said finding with the understanding that the sole consequence of said agreement shall be that the Employees' Retirement System will garnish all payments of alimony beginning February 1, 2001, for so long as both shall live.[7]

....

9. [Eugenia] is awarded as her sole and separate property all of [Timothy's] Aetna Deferred Compensation Plan as of January 24, 2001, plus any increases since that date....

....

11. The Family Court ... shall maintain jurisdiction over [Timothy's] Employees' Retirement System retirement/pension plan, and his Aetna Deferred Compensation Plan in order to enforce the provisions of this order.

12. [Timothy] shall retain as his sole and separate property the unimproved real property located in Costilla County, Colorado,....

13. The appeal filed with the Supreme Court shall be withdrawn by [Timothy's] attorney immediately.

14. Except as otherwise specifically stated, this agreement shall settle all claims for arrears in spousal support, family support and payment of past-due debts as assigned by the prior orders of the Court, but shall not affect any arrears which have built up since January 24, 2001.

15. All prior orders requiring the Employee Retirement System to make payments directly to [Eugenia] are amended and replaced by the language of this order and subsequent income assignment orders.[8]

16. Each party shall, at the request of the other, execute, acknowledge, and deliver any documents which may be reasonably necessary to give full effect to this

---

6. At the September 29, 1998 hearing, Neal Matsuura, a section supervisor at the Enrollment, Claims, and Benefits Section of the State Retirement System, testified that Timothy did not opt for any survivor benefits and that Timothy could not change his option. We note that the last sentence of Hawai'i Revised Statutes (HRS) § 88–83 (1993) states that "[a]ny election of a

mode of retirement allowance shall be irrevocable."

7. In light of the language of this paragraph 5, we do not understand the reference in paragraph 15 to "subsequent income assignment orders."

8. See footnote 6 above.

decree. In the event that either of the parties refuses or is unable to comply with such request within ten (10) days following the request, the parties agree that the Court, pursuant to Rule 70(a), Hawai'i Family Court Rules, may direct the Chief Clerk of the First Circuit Court to do all acts and sign all documents on behalf of the failing party necessary to give full force and effect to the provisions of this decree.

17. [Eugenia] acknowledges that the parties' adult child, ..., is no longer attending school and has no objection to payments to her on behalf of said child being terminated.

18. This order shall take effect on February 1, 2001.

(Footnotes added.)

On March 28, 2001, Timothy filed a motion for reconsideration of the March 13, 2001 stipulated order. In this motion, Timothy challenged the family court's subject matter jurisdiction to order most of what it ordered and challenged most of the rest of the order. In relevant part, he challenged the family court's subject matter jurisdiction to re-characterize the division of some property as alimony, to name the parties' minor daughter as the sole beneficiary of Timothy's retirement pay or pension with rights of survivorship, and the finding that Timothy was in contempt for failing to make alimony/property settlement payments to Eugenia. He asserted his right to a credit for his alleged overpayment of child support.

On May 9, 2001, after a hearing on April 30, 2001, Judge Ching entered an order denying Timothy's March 28, 2001 motion for reconsideration.

On June 4, 2001, Timothy filed a notice of appeal "from all orders entered herein including the Order ... filed on May 9, 2001[.]" This is appeal no. 24323.

On July 9, 2001, Eugenia filed a Motion to Compel Withdrawal of Appeal no. 24007. The court was advised that "Timothy Lowther is in O.C.C.C." On July 17, 2001, District Family Judge Allene R. Suemori entered an order requiring Timothy and counsel for Timothy to "forthwith sign a stipulation to

dismiss the [Hawai'i] Supreme Court appeal filed January 4, 2001. [Eugenia] is awarded attorney's fees and costs."

On August 15, 2001, Timothy filed a notice of appeal of Judge Suemori's July 17, 2001 order. This is appeal no. 24494.

### APPEAL NO. 24007

■ In appeal no. 24007 of the family court's December 6, 2000 order granting Eugenia's October 27, 1999 motion to enforce the Divorce Decree and denying Timothy's HFCR Rule 60(b)(6) motion "for an order setting aside or modifying" the Divorce Decree, Timothy asserts the following points on appeal:

1. The family court erred when it orally denied Timothy's HFCR Rule 60(b)(6) motion.

2. The family court erred when it orally ruled that attorney Bruce Masunaga represented Timothy's interest at the divorce hearing. Timothy contends that the "Court does not address the fact that [Timothy's] problems occurred later, when no opposition was made to [Eugenia's] proposed divorce decree."

3. The family court erred "when it orally ruled that after the date of the contested divorce hearing, [Timothy] had ample opportunity to consult other counsel and take further action within the time period prescribed by [HFCR] Rule 60(b)(1)(2)(3) or the like." Timothy asserts that he "filed his motion under HFCR Rule 60(b)(6), so time limitations of H[F]CR Rule 60(b)(1, 2, 3) are not germane to denial of the motion."

4. The family court "erred when it declared that there was [sic] no extraordinary circumstances existing to grant the motion for relief[.]"

5. The family court erred when it entered paragraph 1 of the December 6, 2000 order. Timothy argues that "[t]here is no one year limitation on a motion for relief under [HFCR] Rule 60(b)(6)[.]"

6. The family court erred when it held Timothy in contempt of the Divorce Decree in paragraph 2 of the December 6, 2000 order. Timothy argues that

[t]here was a complete absence in the record of any authority for the Court's decision. If property settlement matters in the divorce decree do not comport with the standard of HRS § 580–47, the Court should have ordered the amendment of the divorce decree, and at least take the matter of contempt under advisement.

(Record citation omitted.)

7. The family court erred when it entered paragraph 4 of the December 6, 2000 order and ordered Timothy to sign a voluntary assignment authorizing deduction from his retirement pay an amount equal to 75% of his retired pay. Timothy argues that "[t]here is no explanation why it is reasonable for [Timothy] to have to lose the bulk of the marital estate to [Eugenia] basically because he was not present at the contested divorce hearing."

8. The family court erred when it entered paragraph 5 of the December 6, 2000 order and ordered Timothy to sign a voluntary assignment authorizing Aetna to release to Eugenia the balance of Timothy's Aetna Deferred Compensation Plan. Timothy argues that "[t]he Court should have . . . considered whether relief from the divorce decree should be granted pursuant to HFCR Rule 60(b)(6)."

In other parts of his opening brief, Timothy states, in relevant part, as follows:

[Timothy] brought his motion for relief on grounds that the property settlement was "unfair."

. . . .

[Timothy] must respectfully question the discretion of the family court, when the court does not justify or explain why it is fair and just for [Eugenia] to receive the bulk of the marital property.

. . . .

[Timothy] respectfully questions whether it should make that much of a difference that he did not appear for trial, or hired the wrong attorney. [Timothy] respectfully questions whether it should make a difference that he has had some trouble with the law. (Ex. 1–15, received into evidence on February 18, 2000).

. . . .

There is no explanation why it is reasonable for [Timothy] to have to lose the bulk of the marital estate to [Eugenia] basically because he was not present at the contested divorce hearing.

. . . .

[T]he court does not justify or explain why it is fair and just for [Eugenia] to receive the bulk of the marital property.

We agree with Timothy that

[r]elief pursuant to HFCR Rule 60(b)(6) is extraordinary and requires the movant to show that (1) the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5); (2) the reason urged is such as to justify the relief, and (3) the motion is made within a reasonable time. *Hayashi v. Hayashi*, 4 Haw.App. 286, 290, 666 P.2d 171, 174 (1983).

HFCR Rule 60(b)(1) permits relief from a divorce decree for the reasons of "mistake, inadvertence, surprise, or excusable neglect" but requires the motion to be made not more than one year after the decree. HFCR Rule 60(b)(6) permits relief from a divorce decree for "any other reason justifying relief from the operation of the judgment." In other words, HFCR Rule 60(b)(6) does not permit relief for the reasons of "mistake, inadvertence, surprise, or excusable neglect[.]" More specifically,

[t]here are two situations that courts sometimes characterize as "other reasons," but that are more likely egregious forms of conduct covered under another clause of Rule 60(b), and clause (6) is invoked to circumvent the one-year limitation. The first occurs when a party comes in more than a year after judgment to assert that he is the victim of some blunder by counsel. Claims of this kind seem to fit readily within the grounds of mistake, inadvertence, and excusable neglect set out in clause (1), and numerous courts have so held and have denied relief. However, when there is gross neglect by counsel and an absence of neglect by the party, some courts have refused to impute the attorney's negligence to the party and have granted relief under Rule 60(b)(6).

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2864 (1995) (citation omitted).

In this case, there was gross neglect by counsel for Timothy and by Timothy. Therefore, although the family court erred when, as noted in footnote 3 above, it awarded a judgment in the amount of $1,905 when it should have awarded a judgment for one-half of $1,905, the family court did not abuse its discretion when it declined Timothy's request to set aside or modify other parts of the Divorce Decree and when it granted Eugenia's request to enforce the Divorce Decree.

### APPEAL NO. 24323

In his appeal of the March 13, 2001 stipulated order amending the Divorce Decree, Timothy asserts the following points on appeal:

1. "[Timothy's] motion for reconsideration sought to bring to the Family Court's attention an issue whether the Family Court had jurisdiction to enter [paragraph 2 of] the [March 13, 2001] Order Amending Decree Granting Absolute Divorce and Awarding Child Custody, Filed [November 2, 1999.]"

2. Timothy challenges "the jurisdiction of the court to issue an order to designate the parties' minor daughter as sole beneficiary of [Timothy's] retired pay or pensions with right of survivorship." Timothy thereby challenges the family court's subject matter jurisdiction to enter paragraph 4 of the March 13, 2001 stipulated order.

In other words, after requesting "an order setting aside or modifying" the Divorce Decree, and appealing the family court's denial of his request, Timothy now argues that the family court lacked subject matter jurisdiction to enter the March 13, 2001 stipulated order amending the Divorce Decree.

Timothy challenges paragraph 4 based on the last sentence of HRS § 88–83 (1993)

stating that "[a]ny election of a mode of retirement allowance shall be irrevocable." Timothy challenges paragraphs 2 and 4 of the March 13, 2001 stipulated order amending decree based on HRS § 580–56(d). It states, in relevant part, that "[f]ollowing ... one year after entry of a decree or order reserving the final division of property of the party, a divorced spouse shall not be entitled ... to any share of the former spouse's personal estate." Timothy contends that the limitation imposed by HRS § 580–56(d) restricts or inhibits the family court's exercise of its powers under HFCR Rule 60(b)(6).[9]

Timothy argues that "[t]his case is distinguishable from *Cooper v. Smith*," 70 Haw. 449, 776 P.2d 1178 (1989). In *Cooper*, the divorce decree reserved the issue of the division and distribution of the property of the parties. The parties did not settle the issue and the family court did not approve and order the settlement until well after the time limit imposed by HRS § 580–56(d) had expired. The Hawai'i Supreme Court concluded, in relevant part, as follows:

> The [HRS § 580–56(d) ] statute deprives the family court of power to divide the personal estate of the parties after the lapse of the given period over the objections of either party. *Boulton v. Boulton,* 69 Haw. 1, 730 P.2d 338 (1986). In this case, however, the division was effected by an agreement of the parties and submitted to the court for approval and incorporation into the decree. We do not believe the legislature intended that the court would be divested of authority to do this.

*Cooper,* 70 Haw. at 454–55, n. 1, 776 P.2d at 1181–82, n. 1. Timothy contends that although HRS § 580–56(d) does not prohibit what was done in *Cooper,* it does prohibit what was done in this case.

In light of (a) Neal Matsuura's uncontradicted testimony at the September 29, 1998 hearing that Timothy did not opt for any

9. As a matter of statutory interpretation, we conclude that the time from the filing of a notice of appeal of the family court's decree deciding part (4) [division and distribution of property and debts] to the entry of the appellate court's judgment on appeal is excluded when computing HRS § 580–56(d)'s "one year" period. Since appellate courts have jurisdiction to decide that they do not have appellate jurisdiction, this rule applies also in those cases where the appellate court decides that it does not have appellate jurisdiction.

*Todd v. Todd,* 9 Haw.App. 214, 832 P.2d 280, *cert. denied,* 73 Haw. 627, 834 P.2d 1315 (1992).

# 578

survivor benefits and that Timothy could not change his decision and (b) the last sentence of HRS § 88–83 (1993) that "[a]ny election of a mode of retirement allowance shall be irrevocable[,]" we note the additional question whether the family court was authorized to enter the following paragraph 4 of the March 13, 2001 stipulated order: "The parties' [younger daughter] shall remain as sole beneficiary of [Timothy's] retired pay or pension with rights of survivorship."

■ We conclude that the family court did not have jurisdiction to enter its March 13, 2001 stipulated order amending the Divorce Decree. "As a general rule, the filing of a valid notice of appeal transfers all jurisdiction in the case to the appellate court and deprives all family courts of jurisdiction to proceed further in the case, except for some matters." *In re Doe*, 81 Hawai'i 91, 98, 912 P.2d 588, 595 (App.1996) (citations omitted). As noted in *TSA Intern. Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 256, 990 P.2d 713, 726 (1999), the exceptional matters are collateral or incidental matters. These include the right to enforce the judgment, matters specified in HRS § 571–54 (1993) and § 580–47 (Supp.2001), the right under HFCR Rule 60(b) to correct, modify, or grant relief from the judgment but to do so in accordance with the procedure stated in *Life of the Land v. Ariyoshi*, 57 Haw. 249, 553 P.2d 464 (1976), and the right under Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(e) to correct or modify the record on appeal. Do the orders appealed in no. 24323 and/or no. 24494 involve any of these exceptions to this general rule? Specifically, in FC–D No. 98–0705, while Timothy's appeal no. 24007 of the December 6, 2000 order granting Eugenia's October 27, 1999 motion to enforce the Divorce Decree, and denying Timothy's December 1, 1999 HFCR Rule 60(b)(6) motion to set aside or modify the Divorce Decree was pending, did the family court have jurisdiction to enter its March 13, 2001 stipulated order amending the Divorce Decree and its May 9, 2001 order denying Timothy's March 28, 2001 motion for reconsideration? The answer is no. Assum-

ing it would otherwise be relevant, the fact that the March 13, 2001 stipulated order was motivated by the January 3, 2001 ERS motion is irrelevant because the ERS motion was "withdrawn without prejudice by agreement of the parties."

## APPEAL NO. 24494

■ Timothy contends that the family court erred when it enforced paragraph 13 of the March 13, 2001 stipulated order and entered its July 17, 2001 order commanding Timothy and his counsel to "forthwith sign a stipulation to dismiss the [Hawai'i] Supreme Court appeal [no. 24007] filed January 4, 2001."

Timothy argues that the family court "had no jurisdiction within which to enter an order which serves to restrict the jurisdiction of the Hawai'i Supreme Court and the Hawai'i Intermediate Court of Appeals. It remains for the appellate courts to decide, if or when a case within its jurisdiction ought to be dismissed." Timothy's argument ignores HRAP Rule 42(b)(2000).[10]

Consistent with our conclusion that the family court did not have jurisdiction to enter its March 13, 2001 stipulated order amending the Divorce Decree and its May 9, 2001 order denying Timothy's March 28, 2001 motion for reconsideration, we conclude that the family court did not have jurisdiction to enforce its March 13, 2001 stipulated order and enter its July 17, 2001 order compelling Timothy and his counsel to "forthwith sign a stipulation to dismiss" appeal no. 24007.

## CONCLUSION

Accordingly, in appeal no. 24007, we vacate paragraph 2.c of the December 6, 2000 order and remand that paragraph for reconsideration of the judgment for $1,905. In all other respects, we affirm the December 6, 2000 order. We also affirm the January 5, 2001 order.

In appeal no. 24323 of the March 13, 2001 stipulated order amending the Divorce De-

---

10. Hawai'i Rules of Appellate Procedure (HRAP) Rule 42(b) (2000) states in relevant part as follows: "Dismissal in the appellate courts. If the parties to a docketed appeal ... sign and file a

stipulation for dismissal, specifying the terms as to payment of costs, and pay whatever fees are due, the case shall be dismissed upon approval by the appellate court."

cree and in appeal no. 24494 of the July 17, 2001 order commanding Timothy and his counsel to "forthwith sign a stipulation to dismiss the [Hawai'i] Supreme Court appeal [no. 24007] filed January 4, 2001" and awarding Eugenia attorney's fees and costs, we conclude that the appealed orders are void.

In light of the above, we conclude that the January 26, 2001 order approving the withdrawal of the January 3, 2001 motion by the ERS is void. Therefore, the January 3, 2001 motion by the ERS, pursuant to HFCR Rule 60(b)(4) or (6), for relief from the Divorce Decree and the December 6, 2000 order, remains to be decided.

We remand for further proceedings consistent with this opinion.